## HADDEN *v.* LARNED.

1. Where all the pertinent facts on behalf of the claimant are admissible in evidence in a claim case and actually admitted, the refusal of the court to allow an amendment to the claim affidavit setting out these facts in detail, is of no consequence.

2. For the purpose of admitting to record a deed executed in another State, the attestation of a commissioner of deeds for Georgia in that State is sufficient without a certificate verifying his identity and official character; and that printed words describing him were erased and the same words interlined in their proper place without explanation of the erasure, will not vitiate the attestation.

3. That the official seal of the commissioner attached to or impressed upon the original deed was not copied or referred to in the record, will not affect the sufficiency or validity of the recording.

4. A deed of gift from wife to husband duly recorded, is admissible in evidence in favor of a third person who has loaned money on the faith of it, without affirmative proof that the deed was freely and voluntarily executed and not obtained by undue influence, persuasion or fraud.

5. Though a *fi. fa.* appear on its face to carry interest upon interest accrued up to the time of judgment, yet this may be the result of contract and will not render the *fi. fa.* inadmissible in evidence.

6. Instruments acknowledging or ratifying a deed previously made, are not required to be of the same formality as the deed itself, or to have more than one witness.

7. Though the charge of the court was, in part, not strictly accurate, yet in view of the substantial merits of the case, the inaccuracy did no harm and is not cause for a new trial.

8. Where money is loaned on security of land conveyed by deed of gift from wife to husband, which deed she has ratified before delivery of the money, that the deed or the ratification was obtained by him under undue influence or other improper means, will not vitiate the security, unless the lender had notice of the same; and where there is no proof of notice to the lender's agent, it is not error to refuse to charge that notice to the agent as such would be notice to the principal.

9. Ratification of a deed of gift may operate as an estoppel and not merely as an admission, after it has been acted upon as affording security for money advanced upon the faith of it.

10. As against one who has loaned money upon the faith of a wife's deed of gift to her husband and her formal ratification of the same, she knowing when she ratified that the loan had been negotiated for and that her ratification was necessary, the gift is not subject to be set aside for undue influence of the husband in procuring it, of which the lender had no notice or information.

July 20, 1891.

Claim. Pleadings. Practice. Evidence. Amendment. Deeds. Record. Interest. Charge of court. Ratification. Notice. Principal and agent. Estoppel. Husband and wife. Before Judge HINES. Screven superior court. November term, 1890.

Claim was interposed by Mrs. Hadden to the levy of an execution against her husband and in favor of Larned. The property was found subject, and her motion for a new trial was overruled. The facts of the case and the grounds of the motion being sufficiently indicated by the decision, it is only necessary to add the charges given and refused, which formed grounds 11–15:

(11) The court charged that if the jury should find that the claimant was insane at the time of the execu-

tion of her deed to her husband, still, if they should further find that subsequently to the making of the deed she became free from such disability and signed any of the papers introduced in evidence by the plaintiff, before the loan money was turned over to Hadden, she would be estopped from denying the validity of her deed, unless said papers had been obtained from her by undue influence, improper appliances or persuasions of her husband, of which Larned had notice before the money was turned over to Hadden.

(12, 15) The court charged that if the deed or any of the subsequent papers relative thereto, signed by the claimant, were obtained by undue influence or other improper appliances or persuasion on the part of her husband, the plaintiff would not be affected thereby, unless notice was brought home to him before the money was turned over to Hadden.

(13) The court refused to charge that if the jury should find from the testimony that, before the loan was consummated, the money loaned by plaintiff to Hadden was placed in the hands of Mathews to be delivered to Hadden when Mrs. Hadden should sign the papers signed by her subsequently to the deed by her to her husband, and Mathews proceeded to obtain the signing of such subsequent papers, this would make him the agent for the plaintiff, although he may have been the agent for Hadden in the negotiation of the loan; and notice to Mathews would be notice to the plaintiff.

(14) The court refused to charge: "If Mrs. Hadden was *non compos mentis* at the time she signed the deed of gift to her husband, and subsequently signed the other papers introduced in evidence, such papers so subsequently signed can only be used as admissions on her part."

The deed referred to in the second division of the decision was a deed of reconveyance to the premises in

dispute, filed and recorded before the levy of the execution.

W. Hobby and Dell & Wade, for plaintiff in error.

Barrow & Thomas, *contra*.

Bleckley, Chief Justice.

1. In the trial of a case in which property has been levied upon as that of the defendant in execution, and a third person has intervened as claimant, the claim affidavit, expressed in the usual form, is generally the only pleading necessary to admit whatever evidence the claimant may have to offer to uphold his or her own title, or to disparage that of the defendant as a competing title. Here this privilege was allowed in its full extent, and consequently, whether the affidavit was amendable or not, in the manner proposed, the refusal to allow the amendment worked no prejudice. The court treated all the pertinent facts as admissible under the affidavit as it stood, and admitted them with as little stint as if they had been sent out in detail upon the face of the affidavit.

2. One of the deeds introduced in evidence was executed in the State of Massachusetts before two subscribing witnesses, one of whom attested the execution as a commissioner of deeds for Georgia in Massachusetts, affixing to his attestation his seal of office. It is contended that to prepare the deed for record, and to render it admissible in evidence as a recorded deed, without further proof of its execution, it was necessary that the attesting commissioner should have certified to his own identity and official character. His attesting signature was followed by words describing him as a commissioner of deeds for Georgia in Massachusetts, and to avouch his identity and the genuineness of the transaction, his official seal was added. The statute applicable to the question reads as follows : " To authorize the record of

a deed to realty or personalty it must be attested, if executed out of this State, by a commissioner of deeds for the State of Georgia, or a consul or vice-consul of the United States (the certificate of these officers, under their seals, being evidence of the fact), or by a judge of a court of record in the State where executed, with a certificate of the clerk, under the seal of such court, of the genuineness of the signature of such judge." Code, §2706. The words in parenthesis would seem to contemplate a certificate in every instance as evidence of some fact. But what fact? Not the fact merely that the person purporting to be the attesting officer is such officer, but the whole complex fact of execution and attestation of the deed, including the identity and official character of the attesting witness. To make the certificate, together with the seal, evidence of the whole of this complex fact, it is not necessary that the commissioner shall certify in express terms that he is a commissioner in addition to describing himself as such. Whether he is truly a commissioner or not can, when it is disputed, be made to appear by resort to the minutes of the Executive Department; for such commissioners can be appointed only by the Governor. Code, §59. The certificate in the instance now before us was the usual attesting clause of a deed, its words being, "Signed, sealed and delivered in the presence of." We think this was sufficient. It was certainly not a full and formal certificate, but it was the "attesting" certificate usually subscribed by all public officers in witnessing deeds executed in this State. We think the code does not contemplate as indispensable a more formal certificate of attestation by a commissioner of deeds acting for Georgia in another State, than is requisite from a home magistrate acting here. The difference is that the attestation of the former must be verified by his seal, a verification not needed to authenticate an attestation by the latter.

Another point made upon the attesting act of the commissioner was that the description of his office was interlined between his own signature and that of the other witness, and printed words the same as the written words so interlined were erased or stricken out, the place of-the printed words being immediately after the name of the other witness. It seems to us these alterations explained themselves if they were free from special marks of suspicion, and no such marks are suggested. So far from vitiating the attestation, the official seal of the commissioner shows that they were necessary in order to render the attesting act complete and put the document in proper condition for use. Had the printed words been left to stand, the office of commissioner would have been erroneously attributed to the second witness, and by interlining them at the proper place in writing, the office was correctly attributed to the first witness.

3. It seems that in recording the deed the clerk omitted to copy or otherwise indicate the seal of the commissioner which was affixed to the certificate of attestation. This was an imperfection in the recording, but not such as to vitiate it. The deed itself was recorded, and so was the attestation; it was only an adjunct of the attestation that was omitted. No doubt some note or indication of the seal, such as L. S., should have appeared in order to make the record complete and perfect, but to pronounce the recording fatally defective for so slight a blemish would be over technical. A ruling so strict would be out of harmony with the general spirit of our law touching the requisite accuracy of clerical work. A substantial compliance in the performance of such duties is sufficient. Code, §6.

4. The deed of gift from Mrs. Hadden to her husband had been used by the latter to obtain a loan of money from Larned, who parted with his money on the faith

of it. It was duly recorded, and was admissible in evidence in behalf of Larned to show title in Hadden, without affirmative proof that it was freely and voluntarily executed by Mrs. Hadden, and not obtained from her by undue influence, persuasion or fraud. True it is that the relation of husband and wife is one of the confidential relations. Code, §3177; 1 Story's Eq. Jur. §218; 2 Lawson, Rights, Rem. & Pr. §759; Bispham's Eq. §237; 1 Bigelow on Fraud, p. 353; 2 Pomeroy's Eq. Jur. §963. Many authorities treat the relation alone as generating a presumption of undue influence. See Smyley *v.* Reese, 53 Ala. 89, 25 Am. Rep. 598; McRae *v.* Battle, 69 N. C. 98; Converse *v.* Converse, 9 Rich. Eq. 567; Shipman *v.* Furniss, 69 Ala. 555; Boyd *v.* De la Montagnie, 73 N. Y. 498; Stiles *v.* Stiles, 14 Mich. 72. But our code says, "Fraud may not be presumed, but being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence." §2751. And §2666 is in these words: "A gift by any person just arriving at majority, or otherwise peculiarly subject to be affected by such influences, to his parent, guardian, trustee, attorney or other person standing in a similar relationship of confidence, shall be scrutinized with great jealousy, and upon the slightest evidence of persuasion or influence towards this object, shall be declared void, at the instance of the donor or his legal representative, at any time within five years after the making of such gift." The rule of decision fairly deducible from these provisions of the code, is that a gift from wife to husband is, in this State, *prima facie* pure, but that it is to be scrutinized with great jealousy, and will, at her instance, be declared void upon the slightest evidence of persuasion or influence used by him in its procurement. Did the code intend that such conveyances are to be treated as void, at any time within five years after their execution, without some evidence to

impeach them, why should it require any evidence even the slightest, to set them aside? Why not declare them subject to be set aside or held void, unless supported by evidence showing they were not the offspring of persuasion or influence? It seems to us clear that the code throws the weight of the legal presumption in favor of the gift and not against it. ' And notwithstanding the strong current of authorities to the contrary, we deem this treatment of the presumption as sound: and philosophic on general principles. That in the present state of the law, a wife is legally competent to make a gift to her husband, is not questionable. *Cain v. Ligon,* 71 *Ga.* 692; *White v. Stocker,* 85 *Ga.* 200. When she exercises this power by a solemn deed of conveyance, would it not conflict with all the analogies of the law to treat the deed as *prima facie* void, and require it to be upheld by extrinsic evidence before any fact whatever tending to impeach it has been adduced? Is it not the settled habit of the law to regard as effective all deeds between competent parties and embracing an appropriate subject-matter? The presumption which it raises in their favor may, in some instances, be very slight; but for the law to presume a certain class of allowable deeds vicious, and require them to be shown by extrinsic evidence to be free from taint before recognizing them as having operation, would be very anomalous. We think no such anomaly is to be found in the law of this State, and there are authorities tending to prove that it ought not to be recognized elsewhere. Scarborough *v.* Watkins, 9 B. Monr. 540, 50 Am. Dec. 528; Golding *v.* Golding, 82 Ky. 51. See Sharp *v.* McPike, 62 Mo. 300; Waddell *v.* Lanier, 62 Ala. 347; Bancroft *v.* Otis (Ala.), 8 So. Rep. 286; Parfitt *v.* Lawless, L. R., 2 Prob. L. D. 462; Schouler, Husb. and W §§218, 248, 249, 283, 290.

Thus far the discussion relates to the rule of evidence

v 87-41

as between the direct parties to the deed, but the actual case before us is much stronger. Hollis *v.* Francois, 5 Tex. 195, 51 Am. Dec. 760.

5. The *fi. fa.* under which the land in controversy was levied upon was for a certain amount as principal, a certain amount as interest up to a given day prior to the rendition of judgment, "with interest on the principal and interest . . until paid." The presumption is that the *fi. fa.* followed the judgment; and it was legally possible for the judgment to be correct although requiring interest to be computed on. the interest which had accrued and become due prior to the time when the judgment was rendered. This could have been stipulated for as matter of express contract, and no doubt such was the stipulation in the contract on which this judgment was based. It has become usual, in borrowing money on long time, to make the interest payable annually or semi-annually, and agree that matured interest in arrears shall bear interest until paid. Such a stipulation is enforceable. *Tillman* v. *Morton*, 65 *Ga.* 386; *Merck* v. *A. F. L. Mortgage Co.*, 79 *Ga.* 213; *Calhoun* v. *Marshall*, 61 *Ga.* 275.

6. The claimant, Mrs. Hadden, sought to avoid the deed of gift by which she conveyed the premises in controversy to her husband, on several grounds, one of which was that she was *non compos mentis* at the time of its execution. Besides contesting the truth of this ground as matter of fact, the plaintiff met it with subsequent instruments purporting to acknowledge the deed as hers, and ratifying it, all of them executed by her before the plaintiff parted with the money which he loaned to her husband on the faith of the land as security. These instruments did not have the same formality as the deed itself, nor was each of them attested by more than one witness. They were, however, sufficiently full and formal to show a distinct purpose on the part of Mrs.

Hadden to treat the deed as her act and to abide by it. We think this was sufficient. At the worst, the deed was not void but only voidable. It was susceptible of ratification after her restoration to sanity. Martindale on Conveyancing, §26; Dev. Deeds, §§73, 77; Bus. on Insanity, §§395, 396, 404 *et seq.;* 2 Field's Briefs, §532; Howe *v.* Howe, 99 Mass. 88. There is no rule of law which requires an instrument ratifying a prior one to have attesting witnesses, or to be cast into any particular form. Its substance, not form, is the material thing.

7. In charging the jury as set out in the eleventh ground of the motion for a new trial, the court was not quite accurate. Merely signing the ratifying instruments, one or all of them, after her restoration to sanity, would not estop Mrs. Hadden, unless her so signing was a part of the means by which Hadden obtained the plaintiff's money. But the evidence clearly shows that this was the fact; and so the inaccuracy in the charge could not have been prejudicial to the claimant on the substantial merits of her case.

8. If any infirmity of Mrs. Hadden's deed to her husband was not attributable to her want of capacity, but solely to undue influence or other improper means used by him in procuring it, or if the subsequent ratification was procured by such influence or improper means, and if the plaintiff, in making the loan to Hadden, parted with his money on the faith of the land as security and without notice of the misconduct on the part of her husband which induced Mrs. Hadden to execute the deed or ratify it, the plaintiff would not be affected by such misconduct, and the security for the loan afforded by Hadden's deed to him would not be vitiated. If Mrs. Hadden was imposed upon or defrauded by her husband, and if a subsequent creditor who contracted with him for this specific security was not aware of any imposition or fraud, it is much more equitable that she should lose her

land than that the innocent creditor should lose his security. For this reason, the charge of the court complained of in the 12th ground of the motion was correct. It was not contended that the plaintiff himself had any notice, but it was sought to affect him with such notice as Mathews, the agent of Hadden, may have had, on the theory that he, Mathews, was not the agent of Hadden alone, but also of the plaintiff. This theory, on the state of facts in the record, is of doubtful correctness. But granting it to be correct, there was no evidence that Mathews had any notice of any improper conduct by Hadden towards his wife, or that Mathews thought or had reason to think she was not acting freely and voluntarily in facilitating the procurement of this loan. If he had advanced his own money on the faith of what he saw and heard, taking the same security which the plaintiff accepted, it is manifest that he would have been protected. Looking at the transaction from his standpoint, it must have appeared to him that Hadden and wife were acting together in harmonious co-operation to invest Hadden with title to the premises as a free gift, and enable him to borrow money on the same as security. There was nothing, so far as we can discover, to suggest to him a different hypothesis. It would be a gross outrage upon justice to make the plaintiff lose his money by reason of some conjectural or imaginary notice to Mathews, who was the agent of the borrower, and had with the lender no relation of agency except for the one purpose of holding the money intended to be loaned until certain papers were executed, and then delivering it to the borrower. If we are correct in this view, it was not error to decline the request to charge set out in the 13th ground of the motion.

9. Nor was the request embraced in the 14th ground of the motion a legal one. The ratification of a deed of gift may operate as more than a mere admission. It

may operate as an estoppel, after it has been acted upon by advancing money upon the faith of it as a link in the security of the loan.

10. The matter of the 12th ground of the motion is again complained of in the 15th ground, and it is insisted that notice that the deed was voluntary was notice that under section 2666 of the code, it was subject, for five years from the date of its execution, to be set aside at the wife's instance for undue influence, persuasion or other improper practice by the husband in procuring it, and that the omission so to charge was error. We think otherwise. The ratification was with knowledge by the wife that the loan had been negotiated for, and all the facts indicated that she was aware that the property was to be pledged to secure the loan, and that ratification of her prior conveyance was deemed necessary to complete the transaction. It is of great importance to protect wives against being impoverished by the arts, importunities and undue influence of their husbands; but it is of equal importance to protect honest creditors against being defrauded by wily husbands who first induce their devoted wives to aid them in getting money, and then, after the money has been enjoyed by the family, aid their devoted wives to repudiate their acts on the ground that these acts were prompted by wifely affection and confidence, and were therefore not free and voluntary. There is no combination of any two average, every-day people so powerful for good or evil as that of husband and wife; and if one spouse is angelic it seems not to cripple the combination provided the other is intensely human. This remark is general, and no special application of it to the character or conduct of any particular couple is intended.

The evidence warranted the verdict, and there was no error in denying a new trial.     *Judgment affirmed.*