A05A1890. MABRA v. DEUTSCHE BANK & TRUST COMPANY
AMERICAS et al.
(627 SE2d 849)

RUFFIN, Chief Judge.

Mary Mabra filed a petition to cancel an allegedly forged quitclaim deed, which transferred Mrs. Mabra's interest in the marital home to her husband. After Mr. Mabra died, Mrs. Mabra discovered the existence of the deed and sought to enjoin several defendants, including Deutsche Bank & Trust Company Americas, from foreclosing on the house.[1] The parties filed cross-motions for summary judgment. The trial court granted Deutsche Bank's motion and denied Mrs. Mabra's, and she appeals.[2] For reasons that follow, we affirm.

A trial court properly grants summary judgment when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[3] "A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in [a] light most favorable to the nonmovant."[4]

Viewed in this manner, the record reveals that Mary and Burtis Mabra married in 1983. However, the two maintained separate finances. Mr. Mabra paid the mortgage, and Mrs. Mabra would write a check to him every month for $500.[5] At some point, Mr. Mabra informed his wife that the mortgage had been paid in full, although it had not. In reality, Mr. Mabra continued to obtain loans, solely in his own name, using the house as security. Initially, he obtained a

---

[1] Mrs. Mabra filed suit against two other defendants, both of which were subsequently dismissed. For the sake of clarity, we refer solely to Deutsche Bank.

[2] Mrs. Mabra initially appealed to the Supreme Court, invoking its equity jurisdiction, and the Supreme Court transferred the appeal to this Court.

[3] See *VATACS Group v. Homeside Lending,* 276 Ga. App. 386 (623 SE2d 534) (2005).

[4] Id.

[5] Pursuant to OCGA § 44-14-30, "[a] mortgage in this state is only security for a debt and passes no title."

$40,000 loan from FHB Funding Corporation. To obtain this loan, Mr. Mabra apparently created a quitclaim deed, purporting to transfer Mrs. Mabra's interest in the marital home to him, and recorded the quitclaim deed in January 1999. Mrs. Mabra claimed that she never saw or signed this quitclaim deed. Nonetheless, the security deed for the FHB loan — which also was recorded — showed Mr. Mabra as the sole grantor and provided that he is "lawfully seised of the [property] hereby conveyed and has the right to mortgage, grant and convey the [p]roperty."

Mr. Mabra subsequently obtained a loan from Caversham Financial Services. This loan, in the amount of $78,200, was also listed only in Mr. Mabra's name and secured by the marital home. The security deed for this loan was recorded in October 1999. Mr. Mabra then obtained yet another loan solely in his name from NCS Mortgage Services in the amount of $123,600. The security deed for this loan was recorded on February 16, 2000.

In September 2000, Mr. Mabra obtained a loan from Saxon Mortgage for $224,000, again pledging the marital property as collateral. The proceeds from this loan were used, in large part, to satisfy preexisting debts that encumbered the property.[6] This loan was subsequently assigned to Deutsche Bank as trustee and custodian.[7]

Mr. Mabra obtained at least one more loan in the amount of $32,000. Mrs. Mabra was apparently present at the closing of this loan as she signed documents in connection with the loan, including the security deed. The sole grantor listed on the deed was Mr. Mabra.

Mr. Mabra passed away in August 2002, and Mrs. Mabra discovered the forged quitclaim deed and the subsequent loans. Although Mrs. Mabra continues to live in the house, she has not made payments on the mortgage. According to Mrs. Mabra, Deutsche Bank accelerated the debt and threatened foreclosure. Thus, she filed a petition to cancel the allegedly forged quitclaim deed and to enjoin Deutsche Bank from foreclosing on the property.

Deutsche Bank moved for summary judgment, arguing inter alia that: (1) as a bona fide purchaser for value it is protected from Mrs. Mabra's claims; (2) Mrs. Mabra's failure to discover her husband's fraud estops her from having the quitclaim deed cancelled; and (3) since the proceeds from the Deutsche Bank loan were used to satisfy the debts of the Mabras, it is entitled to equitable subrogation. Without setting forth the basis for its decision, the trial court granted

---

[6] According to Deutsche Bank, which now holds the mortgage, the payoff of prior debts renders the Saxon loan first in priority.

[7] For ease of reading, we refer to the loan from this point forward as the Deutsche Bank loan.

Deutsche Bank's motion for summary judgment, and Mrs. Mabra filed this appeal. In multiple enumerations of error, she contends the trial court erred in granting summary judgment to the bank.

1. Initially, we note that Mrs. Mabra's enumerations of error do not correlate with her arguments in her brief, which has hampered our review. We take this opportunity to remind counsel that

> [o]ur requirements as to the form of appellate briefs were created not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this Court; a party will not be granted relief should we err in deciphering a brief which fails to adhere to the required form.[8]

Moreover, several of Mrs. Mabra's enumerations of error presuppose the basis for the trial court's ruling. For example, she contends "[t]he trial court erred in finding the Quitclaim Deed at issue is not a forgery." However, it does not appear that Deutsche Bank raised this argument below, much less that it served as the basis for the trial court's ruling. Given the shortcomings of Mrs. Mabra's brief, we are unable to address her enumerations of error in the order raised.

2. On motion for summary judgment, Deutsche Bank argued that, as a bona fide purchaser for value, it is entitled to protection from Mrs. Mabra's petition to set aside the quitclaim deed. Thus, as a threshold issue, we must consider whether the bank is, in fact, a bona fide purchaser.

"To qualify as a bona fide purchaser for value without notice, a party must have neither actual nor constructive notice of the matter at issue. A purchaser of land is charged with constructive notice of the contents of a recorded instrument within its chain of title."[9] Mrs. Mabra contends that Deutsche Bank cannot be considered a bona fide purchaser for value as a matter of law because: (1) the Saxon security deed misidentifies Burtis N. Mabra as Burtis M. Mabra; (2) the chain of title showed Mr. Mabra was married, which should have put Deutsche Bank on constructive notice that the property was jointly held; and (3) Mrs. Mabra's signature on the quitclaim deed was markedly different from her signature elsewhere in the chain of title. However, none of these facts is sufficient to provide constructive notice of a flaw in the chain of title.

---

[8] *Currid v. DeKalb State Court Probation Dept.*, 274 Ga. App. 704, 706 (1) (618 SE2d 621) (2005).

[9] (Punctuation omitted.) *VATACS Group*, supra at 391 (2).

Notice is that which is "sufficient to excite attention and put a party on inquiry [and] shall be notice of everything to which it is afterwards found that such inquiry might have led."[10] Here, it is undisputed that the quitclaim deed purporting to transfer Mrs. Mabra's interest to her husband was regular on its face and duly recorded. Thus, the bank had no reason to suspect any defect in the chain of title. Moreover, none of the facts listed by Mrs. Mabra is sufficient to excite attention of such defect. Without more, we simply will not put the burden on banks and other subsequent purchasers to compare signatures in the title chain.[11]

Mrs. Mabra further argues that Deutsche Bank could not qualify as a bona fide purchaser since it did not actually *purchase* the Saxon loan. However, the record demonstrates that Deutsche Bank is acting as the "Trustee and Custodian" for Saxon — not that Deutsche Bank is acting in its own right. And Mrs. Mabra does not provide any authority for her proposition that a trustee and/or custodian is precluded from protecting a trust's property interest. Under these circumstances, the trial court did not err in concluding that Deutsche Bank qualified as a bona fide purchaser for value.[12]

Having determined that Deutsche Bank qualifies as a bona fide purchaser for value, we must next determine what protection such status affords it. As the grantee in the security deed who acted in good faith, Deutsche Bank "stands in the attitude of a bona fide purchaser, and is entitled to the same protection."[13] The protection afforded has been stated as follows:

[w]here a purchaser of land from one in possession, who holds a deed thereto that is absolute on its face, has paid the purchase-price and taken possession, parties claiming an equity therein of which the purchaser had no notice are not entitled to have the purchaser's deed canceled.[14]

According to Mrs. Mabra, this rule does not apply because Mr. Mabra obtained his title through forgery. Indeed, forgery is one of the few

---

[10] (Punctuation omitted.) *Whiten v. Murray*, 267 Ga. App. 417, 421 (2) (599 SE2d 346) (2004).

[11] We also reject Mrs. Mabra's contention that the mere fact that Mr. Mabra obtained a succession of loans should have put Deutsche Bank on constructive notice of some problem in the title chain.

[12] See *Farris v. Nationsbanc Mtg. Corp.*, 268 Ga. 769, 771 (2) (493 SE2d 143) (1997); *Anderson v. Streck*, 190 Ga. App. 224, 226 (378 SE2d 526) (1989).

[13] (Punctuation omitted.) *Bonner v. Norwest Bank Minnesota, N.A.*, 275 Ga. 620, 621 (1) (571 SE2d 387) (2002).

[14] (Punctuation omitted.) Id.

defenses that can defeat the claim of a purchaser for value.[15] However, the mere fact that a forgery was involved does not mean that Mrs. Mabra is entitled to the relief that she seeks.

In her petition, Mrs. Mabra seeks the equitable relief of enjoining Deutsche Bank from foreclosing on the property and the cancellation of the allegedly forged quitclaim deed. In other words, she would like to continue to live — cost free — in a house that neither she nor her husband has ever actually owned outright.[16] Although Mr. Mabra told his wife that he had paid off the mortgage, such was untrue. And while it is unfortunate that Mr. Mabra essentially defrauded his wife, "it is much more equitable that she should lose her land than that the innocent creditor should lose his security."[17] This is particularly true where, as here, the land was always encumbered by a mortgage. Again, Mrs. Mabra seeks equitable relief, and "[e]quity seeks always to do complete justice."[18] Although Mrs. Mabra may be entitled to some form of relief, we fail to see the justice in the remedy she seeks. And as we find that Mrs. Mabra was not entitled to the relief sought, the trial court did not err in granting Deutsche Bank's motion for summary judgment.

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED FEBRUARY 28, 2006 — 

*Weissman, Nowack, Curry & Wilco, Jeffrey H. Schneider, Scott A. Johnson,* for appellant.

*McLarty, Robinson & Van Voorhies, John E. Robinson, Gregory H. Blazer,* for appellees.

---

[15] See *Tate v. Potter,* 216 Ga. 750, 752 (1) (b) (119 SE2d 547) (1961); *Chestnut v. Weekes,* 183 Ga. 367, 371 (2) (188 SE 714) (1936) (" 'A purchaser in good faith from one who has no title, in ignorance of the rights of the true owner, obtains no title.' ").

[16] We note that Mrs. Mabra has made no payments on the house and apparently has no intention of doing so.

[17] *Hadden v. Larned,* 87 Ga. 634, 643-644 (8) (13 SE 806) (1891).

[18] OCGA § 23-1-7.