S10A0950. BROCK v. YALE MORTGAGE CORPORATION et al.
(700 SE2d 583)

HUNSTEIN, Chief Justice.

Appellant Jerry Brock ("Brock") commenced this action against his ex-wife, Joyce Brock ("Joyce"), and appellee Yale Mortgage Corporation ("Yale") to, among other things, quiet title in the Suwanee residence he and Joyce once shared (the "property"); set aside a forged quitclaim deed purporting to transfer Brock's interest in the property to Joyce; and set aside a subsequent deed to secure debt Joyce executed in Yale's favor or limit the deed to a one-half undivided interest in the property.[1] The trial court granted Yale's motion for summary judgment, declaring that Yale holds a valid security interest in the entire property and authorizing foreclosure. Brock appeals, arguing that even if Yale is a bona fide purchaser for value, it did not acquire a valid security interest in the entire property by virtue of such status; Yale's status as a bona fide purchaser for value is a question of fact; and, contrary to the trial court's conclusion, he did not ratify Yale's loan transaction with his then wife. We affirm the order of the trial court insofar as it concluded that Yale holds a valid security interest in a one-half undivided interest in the property. We agree with Brock, however, that Yale could not acquire a valid security interest in the entire property by virtue of its status (if any) as a bona fide purchaser for value and that factual questions exist regarding ratification. As such, we reverse the trial court's order to the extent that it holds that Yale has a valid security interest as to the other one-half undivided interest in the property and remand so that a jury may decide whether Brock ratified the quitclaim deed in his divorce settlement

---

[1] Brock also named as defendants the notary whose seal appears on the quitclaim deed and the insurance company that issued a title insurance policy to Yale. The claims against the insurance company were dismissed with prejudice.

agreement with Joyce.

Viewed in the light most favorable to Brock, the nonmoving party, *Chester v. Smith*, 285 Ga. 401, 401-402 (677 SE2d 128) (2009), the record shows as follows. The Brocks purchased the property jointly in 1987, financing the transaction with a loan from First Railroad Mortgage Company. In connection with the loan, the Brocks executed a security deed and promissory note in the amount of $56,000 in the lender's favor. The Brocks did not have a joint bank account. Brock maintained a checking account and gave his wife money each month to make the loan payment, but she did not always use the funds for that purpose. As a result, the Brocks' loan, which had been assigned to Atlantic Mortgage & Investment Corporation ("Atlantic"), went into default in October 1996. The following month, Atlantic's counsel sent the Brocks a notice of foreclosure sale by certified mail. Joyce borrowed money from a friend to bring the loan current and stop the foreclosure process. In August 2000, Joyce received a second notice of foreclosure sale from Atlantic's counsel due to her failure to make the required loan payments. Joyce did not tell Brock about the notice. To forestall foreclosure, she worked out a payment plan with Atlantic.

In January 2001, Joyce received a third notice of foreclosure sale after defaulting under the payment plan. Once again, Joyce did not inform Brock of the foreclosure sale notice, but instead contacted Jerri Browning of mortgage broker Capital Lending Group ("Capital"), about obtaining a new loan. Browning assisted Joyce in procuring a loan from Yale. Browning advised Joyce that in order to secure a loan in her name only, Brock would need to convey his interest in the property to her. At Browning's suggestion, Joyce requested a blank quitclaim deed from Yale's closing attorney, who faxed the deed to her. At the February 2001 loan closing, Joyce presented an executed, unrecorded quitclaim deed by which Brock purportedly transferred his interest in the property to her. Yale does not dispute that Brock's signature on the quitclaim deed is forged. Yale loaned Joyce $60,000, of which $15,460 was used to satisfy the Brocks' debt to Atlantic. Joyce received $38,085.44 in cash at closing. Joyce executed a promissory note and deed to secure debt in Yale's favor.

In May 2004, Brock discovered that his wife had spent over $200,000 from his checking account without his knowledge. He filed for divorce shortly thereafter. Around the same time, Brock learned about the 2001 foreclosure proceedings, the forged quitclaim deed, and the Yale loan. According to Brock, he called Yale after learning of the Yale loan, but the representative he spoke with told him she did not have to speak with him and terminated the call. In August 2004, the Brocks executed a settlement agreement in their divorce pro-

ceedings in which Joyce transferred "any and all of her rights, title and interest [in the property], whether legal or equitable" to her husband. The settlement agreement was incorporated into the final judgment and decree in the divorce proceedings.

In January 2005, Brock commenced this action. Yale answered, asserted counterclaims and cross-claims, and thereafter filed a motion for summary judgment seeking a declaration that it held a valid security interest in an undivided one-half interest in the property. In August 2006, Yale amended its motion to seek a declaration that its security interest extended to the entire property. The trial court granted Yale's motion, declaring that Yale holds a one-half undivided interest in the property. After Yale filed an emergency motion for clarification and/or reconsideration, the trial court amended its order to add that Yale also "hold[s] the other one-half undivided interest in the property." Brock filed an emergency motion for reconsideration, after which the trial court entered a second amended order declaring that Yale "shall have an interest against the entire property and is permitted to foreclose on its interest in the entire property."

1. We affirm the trial court's order to the extent that it recognizes that Yale's security interest in the property extends at least to a one-half undivided interest in the property. The trial court appears to have concluded that Yale obtained a valid security interest in a one-half undivided interest in the property as a bona fide purchaser for value, but, in our view, whether or not Yale occupies that status is not determinative.

OCGA § 23-3-40 provides that a deed may be cancelled on grounds of forgery. If the forged quitclaim deed is set aside here, however, that would not invalidate the subsequent security deed in its entirety. One holding property with another person as tenants in common cannot convey or affect that person's interest without his or her consent. *Booth v. Watson*, 153 Ga. App. 672 (1) (266 SE2d 326) (1980). Yet, a tenant in common may encumber or convey his or her own interest in property without the consent of other cotenants. *Motor Aid v. Ray*, 53 Ga. App. 772, 774 (187 SE 120) (1936). Thus, if a tenant in common purports to convey an interest in the entire property, the deed will affect his or her interest although non-consenting cotenants will not be bound. *Chastain v. Schomburg*, 258 Ga. 218 (367 SE2d 230) (1988); Daniel F. Hinkel, Pindar's Georgia Real Estate Law and Procedure with Forms § 7-84 (6th ed.). It is undisputed that the Brocks acquired the property as tenants in common under a 1987 warranty deed transferring the property to both of them as grantees. See OCGA § 44-6-120. Accordingly, the security deed under which Joyce purported to convey legal title to the entire property to Yale, at a minimum, effectively vested Yale

with a security interest in the one-half undivided interest in the property Joyce indisputably held and was free to convey.

2. The parties vigorously dispute whether the trial court's order should be affirmed on the basis that Yale acquired a security interest in the entire property by virtue of its status as a bona fide purchaser for value. As discussed below, we agree with Brock that Yale could not claim a security interest in the entire property based on such status alone.

As a general rule, "[a] bona fide purchaser for value is protected against outstanding interests in land of which the purchaser has no notice." *Farris v. NationsBanc Mtg. Corp.*, 268 Ga. 769, 770 (2) (493 SE2d 143) (1997); OCGA §§ 23-1-19, 23-1-20. We have long held that "[a] grantee in a security deed who acts in good faith stands in the attitude of a bona fide purchaser, and is entitled to the same protection. [Cits.]" *Roop Grocery Co. v. Gentry*, 195 Ga. 736, 745 (1) (25 SE2d 705) (1943). But we have also long recognized that a forged deed is a nullity and vests no title in a grantee. *Second Refuge Church &c. v. Lollar*, 282 Ga. 721 (3) (653 SE2d 462) (2007); *Rock Run Iron Co. v. Miller*, 156 Ga. 136 (1) (118 SE 670) (1923). As such, even a bona fide purchaser for value without notice of a forgery cannot acquire good title from a grantee in a forged deed, or those holding under such a grantee, because the grantee has no title to convey. *Lollar*, supra at 727-728 (4) (forged quitclaim deed barred a subsequent purchaser from claiming the protection of bona fide purchaser for value doctrine); *Chestnut v. Weekes*, 183 Ga. 367 (1), (2) (188 SE 714) (1936) (deed that was in substance a forgery would be void and insufficient to convey legal title even to innocent purchaser); *Sapp v. Cline*, 131 Ga. 433 (6) (62 SE 529) (1908) ("If . . . a deed should be found to be forged, it would not operate to convey a good title to the grantee therein or persons holding under him" notwithstanding good faith of subsequent holder); *Luther v. Clay*, 100 Ga. 236 (4) (28 SE 46) (1897) ("It is equally well settled that an owner of property will not be deprived of his right to the same by the commission of a forgery, and this is true even where the claimant under the forged instrument had no notice of the forgery, and honestly believed that it was valid and genuine."); see also *Cole v. Levi*, 44 Ga. 579, 582 (1872) (trial court erred in instructing jury that forged deed is a nullity only as to parties having *notice* of forgery).

Hence, in *Tate v. Potter*, 216 Ga. 750 (1) (119 SE2d 547) (1961), this Court held that the plaintiff stated a cause of action to cancel a warranty deed and later security deed by adequately alleging that the warranty deed purporting to convey her interest in property to the grantee who, in turn, executed the security deed, was forged. Id. at 752 (1) (a). We concluded that, even if the security deed holder qualified as a bona fide purchaser for value without notice of the

forgery, the "answer is clear" that he would not obtain good title. Id. at 752 (1) (b). Applying the *Lollar* line of cases, Yale would not acquire a valid security interest in the entire property simply by proving its status as a bona fide purchaser for value.[2]

In arguing to the contrary, Yale relies on *Bonner v. Norwest Bank &c.*, 275 Ga. 620 (1) (571 SE2d 387) (2002) and *Mabra v. Deutsche Bank &c.*, 277 Ga. App. 764 (627 SE2d 849) (2006). In *Bonner*, we held that two lenders who had foreclosed on a security interest in their borrowers' property and purchased it out of foreclosure held title superior to the plaintiff's even though the deed that initially purported to convey the plaintiff's property to the borrowers might be a forgery. Id. at 621 (1). In reaching this conclusion, we reviewed the protections available to a grantee in a security deed qualifying as a bona fide purchaser and recited "[t]he general rule . . . that a bona fide purchaser for value at a judicial sale will be protected although the grantee in a security deed is guilty of fraud." (Punctuation omitted.) Id. at 622, citing, inter alia, *Kouros v. Sewell*, 225 Ga. 487, 488 (169 SE2d 816) (1969). Close examination of the case we relied upon in *Bonner* reveals that it does not support our holding that a bona fide purchaser for value, or a security deed holder occupying such position, obtains good title notwithstanding a forgery in the chain of title. *Kouros* did not involve a forgery in the chain of title; rather, the alleged "fraud" at issue there was the lender's failure to provide notice of the date of the foreclosure sale. Id. at 487-488.[3] After careful consideration, we conclude that *Bonner* is inconsistent with the *Lollar* line of cases and overrule *Bonner* to the extent that it extends the bona fide purchaser for value doctrine to those acquiring title under a grantee in a forged deed. We likewise overrule *Mabra*, supra, notwithstanding certain factual similarities between it and this case, because *Mabra* also runs contrary to the *Lollar* line of cases, which does not recognize that the bona fide purchaser for value doctrine may apply when forgery occurs between spouses.[4]

---

[2] Given our disposition here and in Division 1, we need not decide whether Yale is a bona fide purchaser for value as a matter of law.

[3] *Bonner*, moreover, unlike *Kouros*, did not involve alleged fraud by the grantee in a security deed.

[4] In *Mabra*, a husband and wife maintained separate finances, and the wife wrote a check to the husband every month to pay the mortgage on their home. The husband informed the wife that the mortgage was paid in full although it was not. 277 Ga. App. at 764. In fact, the husband obtained a series of four loans in his name, using the house as security. To obtain the first loan, the husband created and recorded a quitclaim deed purporting to transfer the wife's interest in the marital home to him. The fourth loan was assigned to Deutsche Bank. (The husband also obtained a fifth loan, and his wife was present at the closing and signed documents, including a security deed listing the husband as the sole grantor. The Court of Appeals did not discuss whether these facts gave rise to any defenses.) When Deutsche Bank threatened foreclosure, the wife sought to cancel the forged quitclaim deed and enjoin

3. Under Georgia law, a forged signature is nonetheless binding if ratified by the person whose name was signed. *Ferguson v. Golf Course Consultants*, 243 Ga. 112, 113 (252 SE2d 907) (1979). See also *Rains v. Dolphin Mtg. Corp.*, 241 Ga. App. 611, 614 (4) (525 SE2d 370) (1999). "A ratification may be express or implied from the acts or silence of the principal." OCGA § 10-6-52. Whether ratification occurs is usually a fact question for the jury. *Harris v. Underwood*, 208 Ga. 247 (4) (a) (66 SE2d 332) (1951); *American Computer Technology v. Hardwick*, 274 Ga. App. 62 (2) (616 SE2d 838) (2005).

Yale argues, and the trial court apparently agreed, that Brock ratified "the subject loan agreement" under the divorce settlement agreement. The correct focus of the analysis, however, is whether Brock ratified the forged quitclaim deed such that his wife's security deed effectively conveyed a security interest in the entire property to Yale. The ratification doctrine does not apply to the loan agreement or security deed because Joyce did not purport to enter into them in Brock's name or under authority from him. See *Deal v. Dickson*, 232 Ga. 885 (3) (209 SE2d 214) (1974).

Yale principally relies on the following language in the settlement agreement, which appears immediately after Joyce's agreement to transfer her interest in the property to him:

> The parties acknowledge that [Joyce] has incurred a $50,000 liability on the property. . . . The parties will seek to have said debt forgiven. If the parties are unsuccessful in having the debt forgiven, then [Joyce] shall be responsible for the repayment of said debt. [Joyce] shall further indemnify and hold [Brock] harmless from any and all liability, loss, damage, claim, demand, cost or judgment, including reasonable attorney's fees, arising out of [Joyce's] failure to pay said debt.

In acknowledging that Joyce incurred a "liability on the property," the settlement agreement appears to assume the existence of a valid encumbrance on the property but does not specify its nature. Significantly, the settlement agreement does not clarify whether the

foreclosure. The Court of Appeals found that Deutsche Bank was a bona fide purchaser for value; acknowledged that "forgery is one of the few defenses that can defeat the claim of a purchaser for value," id. at 767-768 (2); but held that the wife was not entitled to the relief she sought, concluding that: "while it is unfortunate that [the husband] essentially defrauded his wife, 'it is much more equitable that she should lose her land than that the innocent creditor should lose his security,'" (footnote omitted) id. at 768 (2), citing a case which involved no issue of forgery. Thus, the Court of Appeals incorrectly concluded that a bona fide purchaser for value was in fact entitled to protection under the particular circumstances.

parties believed that the Yale debt encumbered the entire property or only Joyce's interest. To the extent that Brock merely acknowledged that his wife encumbered her share of the property, that acknowledgment would not evidence an election to treat the forged quitclaim deed as valid. See Restatement (Third) of Agency § 4.01 cmt. b (2006) ("The act of ratification consists of an externally observable manifestation of assent to be bound by the prior act of another person."). Further, if Brock believed that the property interest he was accepting from his wife was encumbered, he might have wanted to clarify that he was not personally liable for the debt and to bargain for protection from any loss he might incur as the result of the debt. Given the ambiguity in the settlement agreement arising from the phrase "liability on the property," a factual issue exists regarding the intention of the parties, which should be determined in light of all the relevant evidence. See *Rodgers v. Rodgers*, 234 Ga. 463 (216 SE2d 322) (1975); see also *American Exchange Nat. Bank v. Ga. Constr. & Investment Co.*, 87 Ga. 651 (3) (13 SE 505) (1891) (extrinsic evidence should be considered to determine whether letter ratified unauthorized indorsement).

The trial court also concluded that ratification occurred by virtue of the fact that a portion of the Yale loan proceeds paid off the balance of $15,460 on the note held by Atlantic. Ratification occurs if a principal, with full knowledge of all the material facts, accepts the benefits of an unauthorized act, *Hendrix v. First Nat. Bank of Savannah*, 195 Ga. App. 510, 511 (1) (394 SE2d 134) (1990), or retains such benefits after discovering the material facts. *Lanier Ins. Agency v. Citizens Bank &c.*, 168 Ga. App. 424, 425 (309 SE2d 419) (1983). For example, in *Ferguson*, supra, 243 Ga. at 113, we held that the plaintiff ratified and could not set aside a warranty deed to which his business partner signed the plaintiff's name without the plaintiff's knowledge or authority when the plaintiff knowingly received and spent proceeds the partner earned from the conveyance. In concluding that "[the plaintiff] cannot accept the proceeds of the sale, keep them, use them, decline to tender them back, and then expect a court of equity to set aside the deed from which he derived a profit, [cits.]" id., we relied, inter alia, on prior precedent that a grantor seeking to cancel a deed in equity must first restore or tender to the grantee any consideration received under the deed. E.g., *Smith v. Brown*, 220 Ga. 845 (142 SE2d 262) (1965); *Echols v. Green*, 140 Ga. 678, 679 (79 SE 557) (1913).

*Ferguson* and the rule of restoration are not controlling here. In *Tate*, supra, 216 Ga. at 753 (2) (b), we held that the grantor in a warranty deed attempting to set it aside based on forgery and want of sufficient mental capacity need not restore the consideration the

grantee later received in exchange for executing a deed to secure debt on the property. In concluding that the security deed holder was involved in a transaction "once removed" from the plaintiff and "cannot correctly claim a relationship entitling him to restitution," id., we relied on *Chestnut*, supra, 183 Ga. at 373 (7), which held in an action to cancel a deed based on forgery and the grantor's insanity and to set aside a subsequent conveyance that the trial court was not required to order the grantor to restore the status quo as to the subsequent purchaser. The Court so held despite the subsequent purchaser's contention that he paid off encumbrances existing at the time the warranty deed was executed. Id. at 370. Here, Brock received nothing of value under the forged quitclaim deed. To the extent he allegedly benefitted incidentally from the payoff of the prior loan in a transaction "once removed" from the unauthorized forged quitclaim deed, he was not required to tender such benefit to Yale as a precondition to equitable relief or to avoid ratification.[5]

For the reasons set forth above, we affirm in part, reverse in part, and remand for proceedings not inconsistent with this opinion.

*Judgment affirmed in part, reversed in part, and case remanded. All the Justices concur.*

DECIDED OCTOBER 4, 2010.

*Andersen, Tate & Carr, Jason W. Blanchard, Elizabeth Clack-Freeman, Donald L. Swift III*, for appellant.

*Beloin, Brown, Blum & Baer, Frederic S. Beloin, James P. Blum, Jr.*, for appellees.

---

[5] Yale argues for the first time on appeal that Brock is collaterally estopped by the final judgment in the divorce proceedings from litigating whether Yale's security interest attaches to the entire property. Pretermitting its procedural default, collateral estoppel is inapplicable since Yale was neither a party nor in privity with a party in the divorce proceedings. See *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864 (2) (463 SE2d 5) (1995).