**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**June 26, 2012**

# In the Court of Appeals of Georgia

A12A0001. BYRD v. UNITED SERVICES AUTOMOBILE
ASSOCIATION.

PHIPPS, Presiding Judge.

Barry C. Byrd filed suit against United Services Automobile Association
(USAA), alleging breach of contract and bad faith in connection with USAA's
decision to deny his insurance claim for the purported theft loss of a vehicle
belonging to him and insured by USAA. Byrd filed a motion for partial summary
judgment, which the trial court did not expressly rule on; and USAA filed a cross-
motion for summary judgment, which the trial court granted. Byrd appeals from the
grant of the cross-motion for summary judgment. Because there exists evidence from
which a jury could find that the loss was covered by the theft provisions of the policy,
we reverse.

Summary judgment is proper when there is no genuine issue of material fact remaining for jury resolution and the movant is entitled to judgment as a matter of law. We apply a de novo standard of review to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the evidence shows that Byrd owned a 2005 Lamborghini vehicle which, on March 4, 2008, he parked at a car dealership belonging to David Jordan. On several previous occasions, Byrd had sold to Jordan cars he had parked on Jordan's lot, when a buyer expressed an interest in purchasing a car. Byrd and Jordan had established a routine practice whereby if Jordan had an interested buyer, Byrd would sell the car to Jordan after they had agreed on a sale price. Byrd would sign over to Jordan only, title to the vehicle. And Jordan would then sell the car to the interested buyer. Concerning his vehicles, Byrd never had business dealings with Jordan's brother (who apparently was also in the car dealership business and possibly worked with Jordan).

---

[1] *DuPree v. South Atlantic Conference of Seventh-Day Adventists*, 299 Ga. App. 352, 353 (683 SE2d 1) (2009) (footnotes omitted).

Some time after he had left the Lamborghini at the dealership, he traveled back to the dealership, and his vehicle was not there; Jordan's brother informed Byrd that he (Jordan's brother) had sold the vehicle. Jordan called Byrd about a week later and also told him that the vehicle had been sold; and on May 24, 2008, Byrd agreed with Jordan to a sales price of $225,000, which was to be paid to Byrd by Jordan within 30 days. On this same day, Byrd canceled the insurance policy he had maintained with USAA on the vehicle.

The car dealer for the buyer deposed that in April 2008 she contacted Jordan's brother, with whom she negotiated the purchase of the vehicle, and by May 13, 2008, she had paid to Jordan's brother the purchase price of $225,000 for the vehicle. The dealer stated that Jordan's brother informed her that the owner of the vehicle had consented to the sale, and that he would obtain the title from the bank and mail it to her. On May 22, 2008, the dealer took possession of the vehicle. The dealer, however, never obtained the title to the vehicle.

According to Byrd, when Jordan contacted him on May 24, Jordan told him that the buyer had made only partial payment of the sales price; Byrd deposed that upon filing in July 2008 a theft report with the police, he learned the buyer's identity,

contacted her, and learned that she had paid more than $200,000 for the vehicle. Byrd stated that he had never agreed to sell the vehicle.

By June 30, 2008, Jordan's car dealership had closed, and neither Jordan nor his brother could be located. The vehicle was not returned to Byrd, who claimed he had never been paid for the vehicle.[2] Byrd continued to make payments for the vehicle to Wachovia Bank, which had financed the vehicle for Byrd and retained the title.

Byrd had insurance coverage on the vehicle through USAA pursuant to a policy which covered loss due to theft. On July 21, 2008, Byrd filed with USAA a theft loss claim, which USAA denied on the ground that there had not been a criminal taking of the vehicle and there was no felonious intent to steal the vehicle.

In its order granting USAA's cross-motion for summary judgment, the trial court stated that "there can be no recovery under [the insurance] policy for a loss asserted from theft in the absence of proof of the existence of a felonious intent on the part of the taker." Thereafter, the court concluded that "there was no event of loss which is covered by the insurance policy at issue." The court found that Byrd had left

---

[2] The trial court's order states that Jordan made a partial payment of $5,100 to Byrd, but the evidence shows that this money was wired to the bank, and apparently represented one of the monthly car loan payments.

4

the vehicle with Jordan voluntarily and "knew at the time the vehicle was left that it could be sold while it was at the dealership." "[E]ven assuming," the court held, "that the car was sold without any right, [Byrd] shortly thereafter ratified[3] and agreed to the sale and the sales price." And the "fact that Jordan later absconded and fled the country before paying the . . . purchase price is not material or relevant to the ratification of the sale, itself."

USAA asserts, "Simply put, there is no dispute that the *proceeds* from the sale of [Byrd]'s vehicle were stolen. However, [Byrd] failed to come forward with any evidence that the vehicle itself was stolen at the time [Byrd]'s insurance policy was in effect." Byrd contends that the trial court erred in finding that the vehicle was not stolen; Byrd argues that the loss of his vehicle resulted from a theft by taking and theft by conversion which were covered under the insurance policy. Byrd also contends that the trial court erred in finding that he ratified the sale of his vehicle;

---

[3] See *Brock v. Yale Mortgage Corporation*, 287 Ga. 849, 855 (3) (700 SE2d 583) (2010) (ratification occurs if a principal, with full knowledge of all the material facts, accepts the benefits of an unauthorized act, or retains such benefits after discovering the material facts).

Byrd argues that he did not have full knowledge of all the material facts. For the reasons set forth below, we reverse.

> In this state, insurance contracts are governed by the rules of construction applicable to other contracts, and words in the policy must be given their usual and common signification and customary meaning. Construction of a contract is a question of law for the court. [But] [w]here any matter of fact is involved, a jury should find the fact.[4]

"When the language of an insurance policy defining the extent of the insurer's liability is unambiguous and capable of but one reasonable construction, the court must expound the contract as made by the parties."[5] "Ambiguity in a policy is duplicity, indistinctness, an uncertainty of meaning or expression."[6] The applicable portion of the policy in this case is not ambiguous.

---

[4] *Cuyler v. Allstate Ins. Co.*, 284 Ga. App. 409, 412 (3) (643 SE2d 783) (2007) (citations, punctuation, and footnote omitted).

[5] *Collier v. State Farm &c. Ins. Co.*, 249 Ga. App. 865, 867-868 (3) (549 SE2d 810) (2001) (citation omitted).

[6] *Canal Ins. Co. v. Wilkes Supply Co.*, 203 Ga. App. 35, 37 (2) (416 SE2d 105) (1992) (citation and punctuation omitted).

The applicable portion of the policy states that "Loss means direct and accidental damage to the operational safety, function, or appearance of, or theft of, your covered auto. . . ." The policy contains no exclusion for loss due to conversion.[7]

> Automobile theft insurance is universally viewed as furnishing protection only against losses arising from criminal takings of the insured vehicle. Consequently, it is held that there can be no recovery under such a policy for a loss asserted to amount to a theft in the absence of proof of the existence of a felonious intent on the part of the taker.[8]

"A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated."[9] "We have held that the phrase 'regardless of the manner in which the property is taken or appropriated,' renders the section

---

[7] Compare *Collier*, supra at 867 (3); *Canal Ins. Co.*, supra (policy expressly provided that "theft" did not include loss in which insured voluntarily parted with the vehicle); *Western Heritage Ins. Co. v. Newcastle Auto Sales*, 249 Ga. App. 262, 263 (547 SE2d 792) (2001).

[8] *Cincinnati Ins. Co. v. Tire Master of Thomaston*, 183 Ga. App. 64, 65 (357 SE2d 812) (1987).

[9] OCGA § 16-8-2.

sufficiently broad to encompass thefts or larcenies perpetrated by deception . . . and theft by conversion . . ."[10]

OCGA § 16-8-4 (a) pertinently provides, "A person commits the offense of theft by conversion when, having lawfully obtained . . . property of another . . . under an agreement . . . to make a . . . specified disposition of such property, he knowingly converts the . . . property to his own use in violation of the agreement. . . ." But one who takes under a fair or honest claim of right does not commit larceny or theft.[11] Notwithstanding that OCGA § 16-8-4 is not intended to punish a simple breach of contract, the presence of fraudulent intent distinguishes theft by conversion from breach of contract.[12]

Here, there is evidence from which a jury could find the fraudulent intent required to commit theft by conversion. Jordan's brother allegedly told the buyer's dealer that Byrd had consented to the sale of the vehicle, but the record shows that Byrd had never agreed to sell the vehicle, and he agreed on a sale price only after the

---

[10] *Cole v. State*, 186 Ga. App. 243, 243-244 (1) (366 SE2d 844) (1988) (citations and punctuation omitted).

[11] *Cincinnati Ins. Co.*, supra (citations omitted); see OCGA § 16-8-10.

[12] *Tukes v. State*, 250 Ga. App. 117, 118 (1) (a) (550 SE2d 678) (2001).

full sale price had been paid (unbeknownst to Byrd) and possession of the vehicle had been transferred to the buyer's dealer. Also, Jordan allegedly told Byrd he would pay him for the vehicle within 30 days but never did pay, although according to the dealer she had paid Jordan's brother $225,000 for the vehicle. Further, there was evidence that by the end of June, neither Jordan nor his brother could be located and the dealership had closed.[13]

Pretermitting the issue of ratification, given the policy's coverage of loss due to theft, the dispositive issue in this case is the absence in the policy of any exclusion for loss due to theft by conversion. There was evidence that by the time Byrd agreed to the sale price and canceled the insurance policy, either Jordan or his brother had already transferred possession of the vehicle to the dealer, Jordan had already allegedly misrepresented to Byrd that the purchase price of the vehicle had not been paid in full, and Jordan's brother had already allegedly misrepresented to the dealer that Byrd had consented to the sale of the vehicle. If a jury determines that Jordan or his brother had fraudulent intent, then the loss is covered under the insurance policy as a theft.

---

[13] See *Tukes*, supra at 117-122 (1) (a) (b).

9

There being a genuine issue of material fact, the trial court erred in granting summary judgment to USAA.[14]

*Judgment reversed. Dillard, J., concurs. Ellington, C. J., concurs in the judgment.*

---

[14] *DuPree*, supra (summary judgment is proper when there is no genuine issue of material fact remaining for jury resolution and the movant is entitled to judgment as a matter of law); *Cuyler*, supra (construction of a contract is a question of law for the court; but where any matter of fact is involved, a jury should find the fact); *Tukes*, supra; see generally *Romano v. State*, 233 Ga. App. 149, 152 (2) (503 SE2d 380) (1998) (criminal intent to deprive owner of his property was a question for the jury where the jury could infer such intent based on the evidence).