S06A0044. NORTHWEST CARPETS, INC. v. FIRST NATIONAL
BANK OF CHATSWORTH.
(630 SE2d 407)

HINES, Justice.

This is an appeal by defendant Northwest Carpets, Inc. ("Northwest") from the grant of summary judgment to plaintiff First National Bank of Chatsworth ("FNBC") in its "Petition to Remove Cloud from Title" to real property in Gordon County, in which it sought to have cancelled a recorded security deed in favor of Northwest. See

OCGA § 23-3-40.[1] For the reasons which follow, we affirm the summary judgment in favor of FNBC.

On September 25, 2001, Scott D. Fortenberry and Dale S. Fortenberry executed a deed to secure debt and security agreement ("security deed") regarding land in Gordon County in favor of Northwest. It was given to secure a promissory note to Northwest in the principal amount of $100,000 plus $8,000 interest due and payable on or before December 24, 2001 ("note"). The note contained a provision for renewal or extension, and the security deed included a "dragnet" provision to cover a renewal or extension of the note or other owed indebtedness.

On November 30, 2001, the Fortenberrys obtained an $893,065 loan from FNBC. A majority of the proceeds, $737,749.23, was distributed to Regions Bank ("Regions") to pay off the outstanding secured indebtedness owed to Regions for the Gordon County property. Another $108,000 of the loan proceeds was given to the Fortenberrys in the form of a cashier's check payable to Northwest. FNBC and Scott Fortenberry agreed that he would deliver the check to Northwest. That same day, November 30, 2001, Scott Fortenberry delivered the check to Northwest's president, Randy Coker. At the time the check was issued, the Fortenberrys had no other indebtedness to Northwest than that represented by the note. Northwest deposited the $108,000 check. Northwest did not forward the September 25, 2001 security deed for cancellation.

Subsequently, on December 4, 2001, Northwest gave the Fortenberrys another check for $100,000, which was intended to be a loan. At that time, the Fortenberrys did not execute a new promissory note or a deed to secure debt. After concluding that the Fortenberrys failed to make adequate payment on this $100,000 loan, Northwest attempted to foreclose on the security deed. FNBC notified Northwest that it would attempt, in the superior court, to enjoin the foreclosure proceedings. Before a hearing in the matter could be scheduled, the Fortenberrys filed for Chapter 7 bankruptcy.

FNBC moved the bankruptcy court to lift the automatic stay so that it could foreclose on the property. The bankruptcy court granted the relief and FNBC undertook foreclosure proceedings. FNBC acquired title to the land through a foreclosure deed.

---

[1] OCGA § 23-3-40 provides:

The proceeding quia timet is sustained in equity for the purpose of causing to be delivered and canceled any instrument which has answered the object of its creation or any forged or other iniquitous deed or other writing which, though not enforced at the time, either casts a cloud over the complainant's title or otherwise subjects him to future liability or present annoyance, and the cancellation of which is necessary to his perfect protection.

In answering the present complaint, Northwest alleged that concurrent with the delivery of the $108,000 cashier's check to Northwest, Scott Fortenberry informed Coker that he needed the money back and an additional 90 days to pay the note in full with the security deed in place.[2] Northwest contended that it had an oral agreement to loan the additional money to the Fortenberrys under the terms of the original note and security deed, and that pursuant to those terms, the money was merely a renewal or extension of the original debt, and thus, subject to the security deed.

The superior court found that the $108,000 indebtedness secured by the security deed was paid in full, and therefore, that FNBC was entitled to judgment as a matter of law. Consequently, the superior court ordered Northwest to produce the original and uncancelled security deed, and that such deed be cancelled as a cloud upon FNBC's title.

1. Northwest contends that the superior court erred in granting FNBC summary judgment because a material issue of fact exists regarding accord and satisfaction and extension and renewal of the original indebtedness. It argues that a factual issue remains as to whether the Fortenberrys and Northwest had a meeting of the minds that a satisfaction of the debt and security agreement occurred, and that if the parties intended a renewal rather than an accord and satisfaction of the prior indebtedness, then the security deed remained in effect. However, the intention of the parties is not relevant, much less dispositive, under the facts of this case.

> A security deed, although conveying the legal title, does so for the purpose of security only, and, upon the satisfaction of the obligation which it is given to secure, is automatically extinguished in effect and can be cancelled of record without any reconveyance by the grantee, in accordance with [statutory] provisions. . . .

*Hennessy v. Woodruff*, 210 Ga. 742, 744 (4) (82 SE2d 859) (1954), quoting *Waldroup v. State*, 198 Ga. 144 (30 SE2d 896) (1944). See OCGA §§ 44-14-60; 44-14-67. Therefore, full payment of the secured indebtedness, as a matter of law, passes legal title back to the grantor. Furthermore, the fact that a security deed contains a future advance or "dragnet" clause does not, in itself, alter the situation. While open end or "dragnet" clauses in deeds to secure debt are valid if the

---

[2] In objecting to FNBC's move to lift the automatic stay, Northwest stated in its pleadings that the meeting between Scott Fortenberry and Coker was subsequent to the delivery of the cashier's check.

subsequent indebtedness conforms to statutory requirements, such clauses are effective only so long as there exists indebtedness between the grantor and the grantee. *Brinson v. McMillan*, 263 Ga. 802 (1) (440 SE2d 22) (1994); *Citizens & Southern DeKalb Bank v. Hicks*, 232 Ga. 244, 246 (1) (206 SE2d 22) (1974). Thus, if the initial $108,000 constituted the Fortenberrys' sole debt to Northwest at the time of delivery and acceptance of the $108,000 check, then Northwest could no longer claim any legal title to the property by virtue of the security deed. Put another way, if there was not a valid renewal or extension of the note in place at that time, then satisfaction of the debt would release the security deed. Compare *Tedesco v. CDC Federal Credit Union*, 167 Ga. App. 337 (306 SE2d 397) (1983), which involved a security deed given in connection with an ongoing line of credit requiring the debtor to annually maintain a zero balance for a 14-day period, and in which the security deed's "dragnet" clause expressly provided that total repayment of the original debt would not operate to extinguish the deed to secure debt.

On appeal from the denial or grant of summary judgment, this Court must conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003). Viewing the evidence most favorably for Northwest fails to reveal any genuine issue of material fact regarding full satisfaction of the debt owed prior to the second $100,000 loan to the Fortenberrys.

Northwest relies upon Coker's deposition testimony as raising an issue of fact regarding renewal of the note and security deed. Specifically, Northwest cites Coker's testimony that before he accepted the $108,000 check, he and Scott Fortenberry had a conversation in which Fortenberry asked to continue the note for another 90 days. However, Coker also testified that he told Fortenberry that "he would have to come back [the following Monday or Tuesday] before he could get another check to do that." What is more, when Coker initially was asked whether the Fortenberrys had any other indebtedness to Northwest at the time the $108,000 check was given to him, Coker replied that there was "[n]ot any other indebtedness." See *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986). Even viewing Coker's testimony about the conversation with Fortenberry as uncontradicted, the testimony simply fails to demonstrate the existence of the Fortenberrys' further indebtedness to Northwest at the time of its acceptance of the cashier's check. At best, it shows a discussion to lend money in the future, which would not

prevent the note and security deed from being satisfied upon payment of the $108,000 check.[3]

2. Northwest also contends that the superior court erred in granting summary judgment because a material issue of fact existed regarding FNBC's negligence in entrusting Fortenberry to deliver funds to Northwest without informing Northwest that the Fortenberrys were satisfying their obligation under the loan agreement, and thus, FNBC should bear the risk of loss pursuant to OCGA § 23-1-14.[4] But the contention is unavailing because Northwest has failed to produce any evidence of FNBC's claimed negligence.

3. Finally, Northwest asserts that a material issue of fact existed regarding whether FNBC complied with the requirements of OCGA § 44-14-160 et seq. regarding the foreclosure of the Fortenberry property. But inasmuch as Northwest's interest in the property ended with the extinguishment of the security deed upon satisfaction of the debt, it lacks standing to challenge the foreclosure proceeding. See *Rockmart Bank v. Doster*, 233 Ga. 748 (213 SE2d 645) (1975); *Stewart Bros., Inc. v. Gen. Improvement Corp.*, 143 Ga. App. 258 (238 SE2d 259) (1977).

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 18, 2006.

*Robert G. McCurry, Robert D. Jenkins, Sr.*, for appellant.
*McCamy, Phillips, Tuggle & Fordham, James H. Phillips, Samuel L. Sanders, Curtis A. Kleem*, for appellee.

---

[3] The analysis makes it unnecessary to address whether an oral agreement in this context raises questions under the Statute of Frauds. See OCGA § 13-5-30.

[4] OCGA § 23-1-14 provides:
When one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury shall bear the loss.