S11A1468. CHASE MANHATTAN MORTGAGE CORPORATION
et al. v. SHELTON et al.

(722 SE2d 743)

NAHMIAS, Justice.

This appeal involves title to a house and lot in a residential subdivision in Forsyth County. The trial court granted the plaintiffs' motion for summary judgment, and the defendants appealed. For the reasons that follow, we affirm.

1. On June 30, 1998, Marcus Shelton acquired the property at issue by warranty deed. The same day, Shelton executed security deeds, which were later recorded, totaling $213,750 (the "Original Security Deeds"). In September 1998, Shelton executed and recorded a quitclaim deed conveying the property to his wife and two young children in three equal parts.

Two years later, Shelton decided to refinance the property. The new lender, Choice Capital Funding, Inc. ("Choice Capital"), advised Shelton that it would not refinance the property unless the children's names were removed from the chain of title. Choice Capital instructed Shelton to hire a particular attorney to accomplish this task. On July 20, 2000, the attorney filed petitions in the Forsyth County Probate Court for letters of guardianship of property of a minor with respect to each child, requesting that Shelton's wife be appointed as guardian of their interest in the property. However, the process was never completed. It is undisputed that the probate court

never appointed the children's mother as their conservator,[1] nor did it enter an order allowing the children's two-thirds interest in the property to be conveyed as security for a new loan.

Nonetheless, on September 27, 2000, Shelton's wife executed and recorded a quitclaim deed that purported to convey her interest in the property, as well as the children's, back to Shelton, signing the deed once for herself and twice more as "Guardian of" each child. Two months later, Shelton signed an affidavit asserting full ownership of the property and executed a $252,000 security deed to Choice Capital (the "Choice Capital Security Deed"), which then loaned him that amount. The loan proceeds were used to pay off the Original Security Deeds, which were cancelled of record.

In August 2001, Choice Capital assigned the Choice Capital Security Deed to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Household Finance Corporation ("HFC"). See *Taylor, Bean & Whitaker Mtg. Corp. v. Brown*, 276 Ga. 848, 848, n. 1 (583 SE2d 844) (2003) (describing the MERS system). Three months later, Shelton filed for bankruptcy, listing the property as his subject to Choice Capital's secured interest of $252,000. The bankruptcy court granted relief from the automatic stay in bankruptcy, and HFC (through MERS) foreclosed on the property on December 3, 2002. At this point, HFC's interest in the property was unencumbered.

On August 25, 2003, HFC conveyed the property by limited warranty deed to defendants Brian and Keily Johnson, who financed the purchase with a loan from defendant Chase Manhattan Mortgage Corporation ("Chase") and a Chase affiliate. The Johnsons executed a security deed in favor of Chase for $195,920 and a second security deed in favor of the Chase affiliate. In 2004, the Johnsons paid off the security deed to a Chase affiliate and executed a $50,000 security deed to defendant USAA Federal Savings Bank, which was later modified to increase the Johnsons' credit line to $105,600.

On March 14, 2005, the probate court appointed attorney Richard Neville as guardian ad litem for the Shelton children in connection with the property. See OCGA § 29-9-2 (a) (authorizing appointment of a guardian ad litem to represent the minor's interests at any time in a conservatorship proceeding). The same day, the probate court wrote to advise the attorney who had prepared the

---

[1] See OCGA § 29-1-1 (2) (defining "[c]onservator" to include "a guardian of the property appointed prior to July 1, 2005"). The General Assembly rewrote the guardianship code, Title 29, effective July 1, 2005. See Mary F. Radford, *Wills, Trusts, Guardianships, and Fiduciary Administration*, 56 Mercer L. Rev. 457, 477-478 (2004). The revision updated the code's terminology to accord with the majority of states. See id. A "guardian of the property" is now called a "conservator," while a "guardian of the person" is simply called a "guardian." See id.

quitclaim deed in 2000 that the conservatorship petitions were still pending, that the children's mother had not been appointed as their conservator, and that no order had been entered authorizing conveyance of the children's two-thirds interest in the property. A copy of this letter was sent to HFC.

On August 24, 2006, after a series of hearings, the probate court found that the children's mother lacked the authority to act on the children's behalf with respect to the property when she executed the 2000 quitclaim deed. The probate court appointed Neville and another attorney, Osgood Williams, to represent the children together in pursuing their claims to the property. On June 27, 2007, Neville wrote to Chase about the possibility of settling the children's claims. Four months later, on October 15, 2007, Chase responded by fax, stating that it was "in the process of gathering documents and investigating the issue" and would contact Neville soon. On December 3, 2007, Neville wrote Chase about an upcoming status conference in the probate court, but Chase did not respond.

On April 21, 2008, Neville and Williams filed a petition to quiet title on behalf of the Shelton children[2] in the Forsyth County Superior Court, naming the Johnsons and the holders of the two outstanding security deeds, Chase and USAA, as defendants. Chase and the Johnsons answered the petition and were granted permission to file a third-party complaint for indemnity and contribution against Shelton and the children's mother. On March 25, 2009, Chase and the Johnsons filed a counterclaim for unjust enrichment. A year later, the plaintiffs filed a motion for summary judgment seeking a declaration that the Shelton children each own a one-third undivided interest in the property free and clear of any lien, security interest, or other cloud of title, as well as summary judgment on the counterclaim. On April 8, 2010, the trial court entered a consent order opening a previous default judgment against USAA, and USAA waived any counterclaim or third-party claims it might have against Shelton and his wife. On December 13, 2010, the court granted summary judgment to the plaintiffs and dismissed Chase and the Johnsons' counterclaim. Chase, USAA, and the Johnsons (collectively, "Appellants") filed a timely joint notice of appeal. See OCGA § 9-11-56 (h) (authorizing direct appeal of an order granting summary judgment on any issue or as to any party). Chase and the Johnsons' third-party complaint against Shelton and the children's mother remains pending in the trial court.

2. Appellants contend that the trial court erred in denying them

---

[2] The elder Shelton child, Jamie Beth Shelton, had recently turned 18 when the petition was filed, and she was later substituted as a plaintiff suing on her own behalf.

bona fide purchaser status with regard to the Shelton children's interest in the property. See OCGA § 23-1-20 ("A bona fide purchaser for value without notice of an equity will not be interfered with by equity."). However, lack of actual or constructive notice of the outstanding interest in the property is a prerequisite for application of the bona fide purchaser doctrine. See *Farris v. NationsBanc Mtg. Corp.*, 268 Ga. 769, 770 (493 SE2d 143) (1997). A purchaser of land is charged with notice of the recorded instruments in the property's chain of title, and "[n]otice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led." OCGA § 23-1-17. See *Deljoo v. SunTrust Mtg.*, 284 Ga. 438, 439 (668 SE2d 245) (2008) (holding that purchasers are " 'presumed to know every other fact which an examination suggested by the records would have disclosed' " (citation omitted)).

The 2000 quitclaim deed showed on its face that the children's mother signed as their purported "Guardian." Although the law treats parents as the natural guardians of their children, it does not give parents an unfettered right to dispose of their children's interests in real property. See *Lynn v. Wagstaff Motor Co.*, 126 Ga. App. 516, 518 (191 SE2d 324) (1972) ("As merely a natural guardian, a parent may not act as a representative of his child's property interests. To do this, he must qualify with the [O]rdinary [court] as guardian of the property."). In order for a parent to divest a minor of an interest in property, former OCGA §§ 29-2-3, 29-2-4, and 29-2-20 required a court order appointing the parent as guardian of the property and another court order approving any actual conveyance. See *United Cos. Lending Corp. v. Coates*, 238 Ga. App. 716, 718 (520 SE2d 236) (1999). See also *Dickey v. Sweeney*, 16 Ga. App. 559, 559 (85 SE 766) (1915) ("A guardian has no authority to sell his ward's property except by order of the judge of the superior court, or by order of the ordinary."). This has long been the law. See, e.g., *Wells v. Chaffin*, 60 Ga. 677, 679 (1878).

Thus, the designation of a "guardian" in the chain of title put Appellants on notice of the need to confirm the mother's legal authority to convey her children's interest in the property. See 3 Daniel F. Hinkel, Pindar's Ga. Real Estate Law & Procedure § 26-49 (6th ed. 2004) ("Pindar's Ga. Real Estate Law") ("The validity of the guardian's appointment is the first point to be examined."). Had Appellants inquired, they would have learned that the probate court never entered an order appointing the mother as the children's conservator or an order approving a conveyance of the children's two-thirds interest in the property back to Shelton. "The purchaser at a guardian's sale is undoubtedly bound, at his peril, to look to the legality of the latter's appointment and his authority to sell," and

"[i]f he fails to exercise these precautions, no amount of good faith or fairness on his part can make his title a good one if, in fact, there was no lawful guardian and, consequently, no authority to sell." *Dooley v. Bell*, 87 Ga. 74, 77 (13 SE 284) (1891). Accordingly, the trial court properly rejected Appellants' claim of bona fide purchaser status.

3. Appellants argue that the trial court erred in holding that the children acquired a collective two-thirds interest in the property by virtue of the 1998 quitclaim deed from their father. It is undisputed that Shelton held equitable title to the property when he executed the deed conveying one-third of his interest to each child and one-third to his wife, and the deed was duly recorded. This equitable title could be conveyed. See 2 Pindar's Ga. Real Estate Law § 21-49 ("While a security deed passes legal title, it leaves an equitable title vested in the grantor which may be sold or otherwise disposed of in the same manner as a full legal title."). Contrary to Appellants' argument, the deed did not need to be delivered to the children. See *Whitworth v. Whitworth*, 233 Ga. 53, 54 (210 SE2d 9) (1974) (explaining that "[d]elivery to and possession of the deed by the parent is evidence of delivery to the infant" and that " '[n]ondelivery shall not be raised against minors' "). As discussed in Division 2 above, the September 2000 quitclaim deed back to Shelton signed by his wife was effective only in conveying back her one-third interest in the property, not the children's remaining interest.

When the Original Security Deeds were paid off and cancelled of record in December 2000, legal title automatically reverted to Shelton and his assigns — his two children. See OCGA § 44-14-67 (a) ("In all cases where property is conveyed to secure a debt, the surrender and cancellation of the deed, . . . on payment of the debt to any person legally authorized to receive the same, shall operate to reconvey the title of the property to the grantor or the grantor's heirs, executors, administrators, or assigns."); *Northwest Carpets, Inc. v. First Nat. Bank of Chatsworth*, 280 Ga. 535, 537 (630 SE2d 407) (2006) ("[F]ull payment of the secured indebtedness, as a matter of law, passes legal title back to the grantor.").

> The grantor's right to a reconveyance of the property upon complying with the contract shall not be affected by any liens, encumbrances, or rights which would otherwise attach to the property by virtue of the title being in the grantee; but the right of the grantor to a reconveyance shall be absolute and permanent upon his complying with his contract with the grantee according to the terms.

OCGA § 44-14-66. Shelton had no authority thereafter to convey a greater interest than he held. See *McDaniel v. Bagby*, 204 Ga. 750,

755 (51 SE2d 805) (1949) ("A person can 'convey no greater title than he has himself.'" (citation omitted)). Thus, only his own one-third interest could be encumbered by Choice Capital's new loan, which was made to Shelton without any involvement by the children. This enumeration of error lacks merit.

4. Appellants argue that the trial court erred in refusing to apply the doctrine of equitable subrogation, which we have described as follows:

> Where one advances money to pay off an encumbrance on realty either at the instance of the owner of the property or the holder of the encumbrance, either upon the express understanding or under circumstances under which an understanding will be implied that the advance made is to be secured by the senior lien on the property, in the event the new security is for any reason not a first lien on the property, the holder of the security, if not chargeable with culpable or inexcusable neglect, will be subrogated to the rights of the prior encumbrancer under the security held by him, unless the superior or equal equity of others would be prejudiced thereby . . . .

*Davis v. Johnson*, 241 Ga. 436, 438 (246 SE2d 297) (1978) (footnote omitted). Essentially, this doctrine provides that where it was the intent of the parties to substitute a new creditor's rights for the rights of the creditor that is being paid off, the new creditor steps into the shoes of the old creditor in terms of priority. See *Greer v. Provident Bank, Inc.*, 282 Ga. App. 566, 568 (639 SE2d 377) (2006). " 'The typical remedy is that equity will set aside a cancellation of the original security and revive it 'for the benefit of the party who paid it off.'" *Secured Equity Financial, LLC v. Wash. Mut. Bank, F.A.*, 293 Ga. App. 50, 53 (666 SE2d 554) (2008) (citation omitted).

However, equitable subrogation only benefits a party who "advances money to pay off an encumbrance on realty," *Davis v. Johnson*, 241 Ga. at 438, and HFC's December 2002 foreclosure extinguished all encumbrances on the property several months before Appellants' first involvement with the property. See *Murray v. Chulak*, 250 Ga. 765, 771 (300 SE2d 493) (1983) ("Where the holder of the senior encumbrance on realty forecloses on the property, the purchaser obtains title free of all inferior liens and any junior liens attach to the surplus of the proceeds."). Appellants argue that equitable subrogation should be applied anyway, because they are "privies" of Choice Capital, which did pay off liens (the Original Security Deeds) on the property, and they should therefore be entitled to the same equitable relief as Choice Capital might have

received. However, Appellants cite no authority for such vicarious application of the doctrine of equitable subrogation, and we are not inclined to extend the doctrine under these circumstances.

Indeed, even if Appellants could step into the shoes of Choice Capital, their claim for equitable subrogation would still fail due to Choice Capital's inexcusable neglect in failing to confirm that the children's mother had the legal authority to convey their interest in the property back to Shelton. See Division 2 above; *Bankers Trust Co. v. Hardy*, 281 Ga. 561, 563 (640 SE2d 18) (2007); *Coates*, 238 Ga. App. at 718. Thus, the trial court properly denied Appellants' claim for equitable subrogation.

5. Appellants, with the exception of USAA,[3] contend that the trial court erred in dismissing their counterclaim for unjust enrichment. The counterclaim accrued at the latest in 2003, but it was not filed until 2009, meaning that the four-year statute of limitation for unjust enrichment claims had run. See *Engram v. Engram*, 265 Ga. 804, 806 (463 SE2d 12) (1995). In addition, Appellants never sought leave from the trial court to file a late counterclaim as required by OCGA § 9-11-13. And in any event, the Shelton children, who were ages two and twelve when the Original Security Deeds were paid off by Choice Capital in 2000, did not unjustly enrich themselves at the expense of Appellants, who were not involved with the property until three years later, nor did they legally consent to the dealings with respect to the loans. See *Coates*, 238 Ga. App. at 719.

6. Appellants also argue that the trial court erred in dismissing their laches defense. We disagree. The delay in question was not eight years as Appellants assert, but rather the time between the appointment of counsel to pursue the children's interests in the property in August 2006 and the notification to Chase of their claims nine months later; the other Appellants were aware of the claims no later than April 2008, when this lawsuit was filed. See *Gay v. Radford*, 207 Ga. 38, 38 (59 SE2d 915) (1950) (holding that laches did not bar a lawsuit where no representative was appointed for the plaintiff during his minority and the plaintiff filed suit within four years of reaching majority, a period the Court characterized as "no great delay"). During that time, the children's appointed counsel were pursuing settlement, and Chase, at least, was not diligent in its responses.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 27, 2012.

---

[3] USAA waived its right to file a counterclaim as part of the consent order to reopen the default judgment against USAA.

*Dickenson Gilroy, Monica K. Gilroy, Tania T. Trumble, McCurdy & Candler, John D. Andrle, Weissman, Nowack, Curry & Wilco, Jeffrey H. Schneider, Kitchens, Kelley & Gaynes, Mark A. Kelley*, for appellants.

*Neville & Cunat, John R. Neville, David R. Trippe*, for appellees.

