**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**August 22, 2012**

# In the Court of Appeals of Georgia

A12A0660. HOLLOWAY et al. v. U. S. BANK TRUST NATIONAL ASSOCIATION.

MCFADDEN, Judge.

U. S. Bank Trust National Association filed this action seeking a declaration that a security deed it holds on property owned by the late Robert Holloway is a valid first lien on the property. Holloway's estate and others with an interest in the property (together, "the estate") appeal the summary judgment in U. S. Bank's favor. There is some evidence that U. S. Bank acquired its security deed from a party who acquired her interest through constructive fraud, so the bank has not shown as a matter of law that it acquired good title. We therefore reverse.

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "[O]n appeal from the denial or grant of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citations omitted.) *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

Viewed in this light, the evidence shows that in June or July 2001, Holloway conveyed title to his property to Sadie Flowers by quitclaim deed. The appellate record is silent as to their relationship and the circumstances of the conveyance, but in another lawsuit, the trial court found that Flowers "exploited, defrauded and/or tricked" Holloway into executing the deed. Flowers eventually granted her husband an interest in the property. In December 2002, Flowers and her husband obtained a loan from the predecessor in interest of U. S. Bank. They granted a security deed in the property to secure the loan. The security deed was recorded on January 6, 2003. At the time, nothing in the property records indicated any kind of irregularity in the quitclaim deed from Holloway to Flowers.

Holloway retained possession of the property, living there until August 2, 2003, when Flowers forced him out. On August 6, 2003, eight months after the deed to secure debt had been recorded, Holloway filed an action to set aside the quitclaim deed to Flowers. Although the trial court here took judicial notice of the records in the set-aside action, the set-aside complaint is not included in this appellate record. Accordingly, we do not know the allegations forming the basis of the set-aside action. Neither U. S. Bank nor its predecessor was notified of the action to set aside the quitclaim deed. In December 2005, the conveyance from Holloway to Flowers was set aside on the ground that Flowers "exploited, defrauded and/or tricked" Holloway into signing the quitclaim deed, and the quitclaim deed was "the product of fraud and [was] void."

The Flowerses defaulted on their obligation to U. S. Bank, which sought to foreclose on the property. As a first step in that undertaking, the bank brought this action seeking a declaration that its deed to secure debt is a valid first lien on the property.

The superior court granted U. S. Bank's motion for summary judgment, declaring the bank's deed a valid first lien. The estate appealed to this court.

1.     We initially transferred this appeal to the Georgia Supreme Court on the ground that this is an equity case involving title to land. The Supreme Court transferred it back to us, finding that it is not, because

> this case, which involves the validity of a security deed, does not come within the [Supreme] Court's equity jurisdiction by virtue of the issue raised regarding the equitable principle embodied in OCGA § 23-1-14. Nor does this appeal invoke the [Supreme] Court's title to land jurisdiction under *Graham v. Tallent*, 235 Ga. 47, 49 [218 SE2d 799] (1975). . . . [I]t appears that no other issue raised by appellants places the case within [the Supreme Court's] jurisdiction. . . .

2.     In its order granting summary judgment to U. S. Bank, the trial court decided that the deed to secure debt from Flowers to U. S. Bank created an encumbrance on the property and that U. S. Bank was entitled to pursue its rights under the deed. In support of this ruling, the trial court acknowledged that generally a grantor's retention of possession gives notice of his rights in property, see OCGA § 44-5-169, but, without citing authority, the court questioned whether such notice extends to a lender that does not intend to reside at the property. The court then applied the equitable principle that when one of two innocent persons must suffer the consequences of a wrongful act of a third person, he who gave the third person the power to inflict the injury must bear the loss. See OCGA § 23-1-14. The trial court

4

concluded that since both Holloway and U. S. Bank were victims of Flowers' fraud, U. S. Bank must prevail; although the appellate record contains no evidence on these issues, the court found that Holloway had a diminished capacity and that Holloway's heirs failed to takes steps to discern that he had a diminished capacity and to protect him from Flowers' fraud.

The trial court did not address, however, whether U. S. Bank showed as a matter of law and undisputed fact that the Flowerses had good title to the property that they could pass to U. S. Bank. "[I]t is elementary that land not owned by the grantor cannot pass by his deed." *Second Refuge Church of Our Lord Jesus Christ v. Lollar*, 282 Ga. 721, 727 (3) (653 SE2d 462) (2007) (quoting 2 Daniel F. Hinkel, *Pindar's Georgia Real Estate Law and Procedure* § 19-20, at 329 (6th ed.)). If Flowers had no title to Holloway's property because she obtained her quitclaim fraudulently, she could not pass title to the property and the issues addressed by the trial court are irrelevant. See *Aurora Loan Servs. v. Veatch*, 288 Ga. 808, 809 (710 SE2d 744) (2011).

The Supreme Court recently addressed the validity of a security deed that was preceded in its chain of title by a forged deed. *Brock v. Yale Mortg. Corp.*, 287 Ga. 849 (700 SE2d 583) (2010). The Court held that

5

[a]s a general rule, a bona fide purchaser for value is protected against outstanding interests in land of which the purchaser has no notice. [And] . . . a grantee in a security deed who acts in good faith stands in the attitude of a bona fide purchaser, and is entitled to the same protection. But . . . a forged deed is a nullity and vests no title in a grantee. As such, even a bona fide purchaser for value without notice of a forgery cannot acquire good title from a grantee in a forged deed, or those holding under such a grantee, because the grantee has no title to convey.

(Citations and punctuation omitted.) Id. at 852 (2).

The Supreme Court previously had applied this principle in a case that involved fraud, but not an actual forgery. In *Chestnut v. Weekes*, 183 Ga. 367 (188 SE 714) (1936), although there was no actual forgery, the Supreme Court found certain fraudulent conduct "in substance" to be a forgery. In that case, the evidence showed that:

Mrs. Gay was about 82 years old. She had a broken hip, and was confined to her bed for some time. A practical nurse was present in the sickroom, waiting on Mrs. Gay on January 21, 1932, when Dr. Baird came in. Before the doctor arrived Mrs. Gay was not conscious of anything for some time. Baird administered medicine to her with a hyperdermic needle. It was not the same kind of medicine he had been administering. He gave her this injection about 10 o'clock in the morning. He went away and returned about 12:30 or 1 o'clock. Mrs. Gay was in a helpless condition, and talked of seeing a woman in white,

6

when no woman in white was there. The medicine seemed to paralyze her mind absolutely. She seemed to be in a kind of crazy stupor, a helpless condition. When Dr. Baird came in he had a deed for her to sign. He held her helpless hand with the pen in it to sign the deed.

Id. at 369-370. The deed granted the property to Dr. Baird's wife, who subsequently sold the property to D. O. Chestnut, who had no notice of the fraud. Id.

The Supreme Court held that "[b]eing of such character, the paper in so far as it purported to convey the title would be void and insufficient to convey the legal title to the purported grantee." (Citations omitted.) Id. at 371 (1). The Supreme Court concluded that the signing of the name of the grantor "in substance would be a forgery," and the void deed was insufficient to convey legal title, even to the innocent purchaser, Chestnut. Id. (1), (2). But see *Hadden v. Larned*, 87 Ga. 634, 643-644 (8) (13 SE 806) (1891) (deed that was obtained by fraud or undue influence cannot be pleaded by the grantor against a bona fide purchaser or lender without notice). The Supreme Court cited *Chestnut* with approval in *Brock*. 284 Ga. at 352 (2).

Here, although the superior court in the set-aside action did not find forgery, it found that Flowers "exploited, defrauded and/or tricked" Holloway into signing the quitclaim deed and the quitclaim deed from Holloway to Flowers was "the product of fraud and [was] void." U. S. Bank's interest in the property is dependent on the

7

fraudulent deed made to Flowers. If Flowers' fraud amounted to a constructive forgery, then no title passed to U. S. Bank. *Chestnut*, 183 Ga. at 371 (1). And if the security deed from the Flowerses to U. S. Bank did not convey title, then it would be "of no moment whether the deed records provided notice . . . at the time [Flowers] executed the security deed on which [U. S. Bank] bases its claim; there [would be] simply no title held by [Flowers] or any subsequent assignee." (Citations omitted.) *Aurora Loan Servs.*, supra, 288 Ga. at 809.

The record on appeal, however, contains no evidence regarding the specific nature of the fraud perpetuated by Flowers upon Holloway. Thus, U. S. Bank has not shown that it was entitled to judgment as a matter of law. See OCGA § 9-11-56 (c). "Under these circumstances, there appear to be both issues of material fact remaining as well as important questions of law which the trial court has not yet reached. Accordingly, the trial court erred in granting summary judgment to [U. S. Bank]." *Owens v. City of Greenville*, 290 Ga. 557, 559 (2) (722 SE2d 755) (2012).

*Judgment reversed. Barnes, P. J., and Adams, J., concur.*