**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 10, 2014**

# In the Court of Appeals of Georgia

A14A0106. STEARNS BANK, N.A. v. DOZETOS et al.           DO-007

DOYLE, Presiding Judge.

This case arises from a 2008 action to quiet title as to approximately 14 acres of land known as 2441 Branch Road, Monroe County, Georgia, filed by Keith and Lori Dozetos. Specifically named in the action were, inter alia, Keith's mother, Bea Nickelson; Earl C. Mitchell, Jr., d/b/a BBS Construction Company; and E-Bank, the predecessor in interest to the current appellant, Stearns Bank, N.A. ("the Bank"). In addition to the petition to quiet title, the Dozetoses alleged fraud, breach of contract, and unjust enrichment against Nickelson.[1]

---

[1] The Dozetoses' claims against Mitchell and various other parties are not pursued in this appeal.

In response to the Dozetoses' action, Nickelson filed an answer, cross-claims, and counter-claims against the Dozetoses and E-Bank, alleging that she held legal title to the property. E-Bank filed an answer, and after E-Bank was taken into receivership by the Federal Deposit Insurance Corporation and its assets assigned to the Bank, the Bank asserted various counter-claims and cross-claims against Nickelson and the Dozetoses based on its purported security interest in the property for the payment of construction funds totaling $144,000 provided by the Bank to Mitchell to build a home on the property for the Dozetoses. The Bank appeals the trial court's sua sponte grant of summary judgment in favor of Nickelson, which awarded her title to the property and cancelled all encumbrances on the property.[2] For the reasons that follow, we reverse and remand for further proceedings.

"On appeal from the denial or grant of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a

---

[2] The Bank initially appealed this case to the Georgia Supreme Court, which transferred the case in an order entered August 12, 2013, to this Court pursuant to the doctrine set forth in *Graham v. Tallent*, 235 Ga. 47, 49 (218 SE2d 799) (1975), holding that "[c]ases respecting title to land" constitute "actions at law . . . in which the plaintiff asserts a presently enforceable legal title against the possession of the defendant for the purpose of recovering the land." See also *Strickland v. McElreath*, 308 Ga. App. 627, 630 (708 SE2d 580) (2011) (*Smith, J.*, concurring fully and specially).

genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law."[3]

The record reveals that in 1998, Keith Dozetos bought the approximately 14-acre property, but in February 2002, he used the property as collateral to borrow at least $8,000 from his mother, Nickelson.[4] Pursuant to their verbal agreement, Dozetos issued a quitclaim deed to Nickelson, but the deed did not memorialize the full agreement and appeared on its face to be a conveyance of absolute title. Nickelson admitted that the quitclaim deed issued to her on the property was meant to constitute a security interest for repayment of the loan. Keith contended that within one and a half years of the February 2002 conveyance he repaid the $8,000, which he maintained was the only loan secured by the deed, but Nickelson refused to deed the property back to him as she had agreed to do. Nickelson, on the other hand, contends that several other amounts totaling $38,000 were also included in the agreement, and the loan was never fully repaid. She also admitted that the Dozetoses maintained a

---

[3] (Punctuation omitted.) *Holloway v. U.S. Bank Trust, N.A.*, 317 Ga. App. 452 (731 SE2d 763) (2012), citing *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

[4] Keith alleged that the security interest was only for two acres of the property, but the description included in the quitclaim deed matches that in his original warranty deed.

3

trailer on the property from as early as 2002 and that many of the sums she advanced the Dozetoses were intended for them to develop the property for building their home.

Because Nickelson refused to re-deed the property to him, Keith forged a quitclaim deed purportedly from Nickelson to his wife, Lori, in 2006.[5] In early February 2007, Lori contracted with Carter Mitchell for construction of a home on the property whereby Lori transferred the property to Mitchell via a quitclaim deed, which title Mitchell used to secure a construction loan to build the home. In early March 2007, Mitchell obtained a $100,000 construction loan from E-bank for which Mitchell executed a deed to secure debt against the property. Construction on the home began, and later that year, in June 2007, the loan was modified to $125,000; it was modified again in August 2007 to $140,000.

Nickelson learned of the forged quitclaim deed in June 2007 — approximately two months after the document was recorded and two months before completion of the house.[6] In February 2008, the Dozetoses filed the instant quia timet action. The

---

[5] Keith admitted he forged the deed, and in May 2008, he pleaded guilty to forgery in connection with the deed. See OCGA § 44-2-43.

[6] Stearns maintains that Nickelson failed to alert E-Bank (holder of the note at that time) to the forgery; however, Stearns does not point to record evidence that Nickelson was aware of E-Bank's deed to secure debt.

trial court determined that because Keith had forged the quitclaim deed, Nickelson was the title holder of the property and Stearns' lien could not be asserted against the property because Lori, and thus Mitchell, had no interest in the property to encumber the property as security for the loan.

Stearns contends that the trial court erred by granting summary judgment to Nickelson based on its finding that the quitclaim deed from Nickelson to Lori was a forgery.

As an initial matter, it is undisputed that the quitclaim deed purporting to transfer title of the property from Nickelson to Lori is a forgery. And "a forged deed [will] not operate to convey a good title to the grantee therein or persons holding under him; nor would the good faith of a subsequent holder suffice to make such conveyance a good transfer of title."[7] Nevertheless, Stearns argues that questions of material fact remain as to whether, prior to the forgery, Nickelson had an interest in the property because it is undisputed that Keith provided the deed to her in security of a loan. Stearns supports its argument with this proposition of law:

---

[7] (Punctuation omitted.) *Tate v. Potter*, 216 Ga. 750, 752 (1) (b) (119 SE2d 547) (1961). See also *Vatacs Group v. U. S. Bank N.A.*, 292 Ga. 483, 485 (2) (738 SE2d 83) (2013).

5

A deed or bill of sale, absolute on its face and accompanied with possession of the property, shall not be proved, at the instance of the parties, by parol evidence to be a mortgage only, unless fraud in its procurement shall be the issue to be tried. The converse is equally true, that a deed absolute on its face not accompanied with possession of the property may be proved by parol evidence to be a mortgage only.[8]

Generally speaking, the intent of the parties must be determined from the deed's text alone, and extrinsic evidence will be admitted to interpret the deed only where the deed's text is so ambiguous that its

---

[8] (Punctuation omitted.) *Haire v. Cook*, 237 Ga. 639, 643 (2) (229 SE2d 436) (1976). See also OCGA § 44-14-32; *Shirley v. Shirley*, 209 Ga. 366 (1) (72 SE2d 719) (1952) (providing warranty deed); *Davis v. Akridge*, 199 Ga. 867 (1) (36 SE2d 102) (1945) ("It is a well-recognized principle of law . . . that a deed absolute in form may be shown to have been made to secure a debt, provided possession of the property involved remains in the maker."); *Southern Railway Co. v. Williams*, 160 Ga. 541 (128 SE 681) (1925) (holding that in the case when the grantor executed quitclaim deed to grantee who never took possession, parol evidence was admissible to establish deed was only for security of a debt and extinguished upon repayment by grantor). Compare with *Mitchell v. Fullerton*, 83 Ga. 301, 302-303 (9 SE 1083) (1889) (explaining that a deed absolute on its face *accompanied by possession of land by the grantee* prevented by statute admission of parol evidence to establish that deed was made only as security of a debt by the grantor). Accord *Clements v. Weaver*, 301 Ga. App. 430, 434-435 (2) (687 SE2d 602) (2009) ("Where a grantor of a quitclaim deed assigns all its right, title, interest, claim or demand in the tract of land conveyed, it is estopped from asserting any title to or interest in the property conveyed, acquired previously to the execution of the quitclaim deed. A grantor cannot engraft upon a written quitclaim deed an oral contract which would impose an additional affirmative obligation upon the grantee. Similarly, parol evidence is not admissible to place conditions upon a quitclaim deed which is absolute on its face.") (punctuation omitted).

6

meaning cannot be determined through application of the ordinary rules of textual construction. Absent such ambiguity, there is no question of fact to be resolved by the factfinder. . . . [If] the language of a written instrument is clear and unambiguous, the courts must enforce it as written rather than giving effect to the subjective and unexpressed intentions and understandings of one party."[9]

That said, in this case, we have a grantor of a facially absolute quitclaim deed who remained in possession of the property. Nickelson did not dispute that this quitclaim deed was given to secure a debt on the property.[10] Nor did she dispute the contention that the Dozetoses were in physical possession of the property after Keith conveyed the property to her.

Here, the record establishes that both Nickelson and Keith understood the quitclaim deed he issued to her to be given in security for a debt and that upon

---

[9] (Footnotes and punctuation omitted.) *Second Refuge Church of Our Lord Jesus Christ, Inc. v. Lollar*, 282 Ga. 721, 724-725 (2) (653 SE2d 462) (2007). See also *Clements*, 301 Ga. App. at 434-435 (2).

[10] "Georgia contract law requires a meeting of the minds of the parties, and mutuality, and in order for the contract to be valid the agreement must ordinarily be expressed plainly and explicitly enough to show what the parties agreed upon. A contract may be enforceable even though it rests only in words as remembered by the witnesses." (Punctuation omitted.) *Bedsole v. Action Outdoor Advertising*, 325 Ga. App. 194, 198 (1) (750 SE2d 445) (2013).

7

repayment of the debt, title would be returned to Keith.[11] Therefore, the trial court

erred by failing to find that Nickelson had only a security interest in the property.[12]

The only remaining question with regard to Nickelson's interest is what the full

amount of the debt was (between $8,000 and $38,000) and whether Keith satisfied

his obligation to Nickelson.[13] It remains for the trial court to make this finding.[14]

The trial court also determined that the nature of the quitclaim deed between

Keith and Nickelson was not an issue because even if Nickelson's interest had merely

---

[11] See *Williams*, 160 Ga. at 542; *Bedsole*, 325 Ga. App. at 198 (1). See also OCGA § 23-3-40 ("The proceeding quia timet is sustained in equity for the purpose of causing to be delivered and canceled any instrument which has answered the object of its creation or any forged or other iniquitous deed or other writing which, though not enforced at the time, either casts a cloud over the complainant's title or otherwise subjects him to future liability or present annoyance, and the cancellation of which is necessary to his perfect protection.").

[12] See, e.g., *Northwest Carpets Inc. v. First Nat. Bank of Chatsworth*, 280 Ga. 535, 537 (1) (630 SE2d 407) (2006) ("A security deed, although conveying the legal title, does so for the purpose of security only, and, upon the satisfaction of the obligation which it is given to secure, is automatically extinguished in effect and can be cancelled of record without any reconveyance by the grantee[.]") (punctuation omitted).

[13] See *Williams*, 160 Ga. at 542.

[14] Although the trial court found that Keith had unclean hands on the basis of the forgery, in this case, Nickelson never had full title to the land to begin with, and may have had no remaining security interest at the time Keith forged the deed.

8

been a security interest, Stearns' claims for an equitable lien, unjust enrichment, or quantum meruit would fail because it emanated from the forged deed giving title to Lori. But this conclusion is also erroneous. There is evidence that would support a finding that Keith knew of the loan and construction, and therefore, even if the loan was made to Mitchell and even if the construction contract was between Lori and Mitchell, those facts would not preclude Stearns' claims against Keith, who orchestrated the entire transaction.[15] Thus, the trial court erred by finding that Stearns' claims were precluded on that basis and by failing to make a determination of Nickelson's remaining security interest, if any, in the property.

*Judgment reversed and case remanded for further proceedings consistent with this opinion. Miller and Dillard, JJ., concur.*

---

[15] See *Bedsole*, 325 Ga. App. at 200-201 (3). See also *Hollifield v. Monte Vista Biblical Gardens*, 251 Ga. App. 124, 128-130 (2) (a) & (c) (553 SE2d 662) (2001) ("Under the theory of liability for quantum meruit the essential elements are: (1) the provider performed as agent services valuable to the recipient; (2) either at the request of the recipient or knowingly accepted by the recipient; (3) the recipient's receipt of which without compensating the provider would be unjust; and (4) provider's expectation of compensation at the time of rendition of services."); *Reidling v. Holcomb*, 225 Ga. App. 229, 232 (2) (483 SE2d 624) (1997) ("The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received; otherwise the party has been unjustly enriched at the expense of another and, in fairness and good conscience, must reimburse the other to the extent of the value conferred.").