**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**October 7, 2025**

# In the Court of Appeals of Georgia

A25A1105. MIDFIRST BANK v. MANTOOTH et al.

MCFADDEN, Presiding Judge.

Appellant MidFirst Bank's predecessor-in-interest, Village Capital & Investment, LLC, extended a loan to John Gilreath in a 2013 refinancing transaction that, among other things, paid off an existing loan on the property at issue. But when he executed the deed to secure debt in connection with that transaction, Gilreath did not have — and so could not convey — an interest in the entire property.

This appeal concerns the Bank's attempt to obtain equitable relief so as to encumber the entire property. At issue is that portion of the property owned by the heirs of Gilreath's late wife ("the appellee heirs"). They were not parties to the

refinancing transaction and did not execute the 2013 deed to secure debt or otherwise themselves convey any property rights to Village Capital.

The trial court denied the Bank's motion for summary judgment on its equitable claims. On appeal, the Bank argues that the trial court should have held that the Bank was entitled to either equitable reformation of the 2013 deed to secure debt, equitable subrogation putting it in the position of the lender whose loan Village Capital paid off in 2013, or an equitable lien on the entire property. Because the Bank has not shown that it was entitled to any of these forms of relief as a matter of law, we affirm the trial court's denial of its motion for summary judgment.

The Bank also argues that the trial court erred by misstating, in the order on appeal, the respective property interests of Gilreath and the appellee heirs. We agree and direct the trial court to correct that error in any further proceedings below.

1. *Facts and procedural history*

Summary judgment is proper when there is no genuine issue of fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). Where, as here, "the movant is the plaintiff, [it] has the burden of presenting evidence to

support [its] claim and the burden of piercing the defendant's affirmative defenses." *State of Ga. v. Rozier*, 288 Ga. 767, 768 (707 SE2d 100) (2011) (citation and punctuation omitted). On appeal, we "conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Hood v. Todd*, 287 Ga. 164, 165 (695 SE2d 31) (2010) (citation and punctuation omitted).

So viewed, the evidence shows that in 2002, John Gilreath obtained a fee simple title in the property at issue through a warranty deed and then conveyed an undivided one-half interest in the property to his wife, Helen, through a quitclaim deed. Both deeds were recorded. On April 22, 2009, Helen Gilreath executed a warranty deed, which was later recorded, that purported to convey her one-half interest in the property to herself and her husband, John, as "tenants by the entirety," a form of joint tenancy with right of survivorship specific to married couples. But in Georgia all estates are held to be tenancies in common, not tenancies with right of survivorship, unless they satisfy the statutory requirements for creating a joint tenancy with right of survivorship set forth in OCGA § 44-6-190. *Davis v. Estate of McClain*, 370 Ga.

3

App. 114, 115 (895 SE2d 508) (2023). The 2009 warranty deed did not satisfy those statutory requirements, so its effect was to create a tenancy in common in which John Gilreath owned a three-quarter interest in the property and Helen Gilreath owned a one-quarter interest in the property.

Also on April 22, 2009, John and Helen Gilreath executed a deed to secure debt conveying an interest in the property to Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for lender Guaranteed Home Mortgage, Inc. That property interest secured a loan from Guaranteed Home Mortgage, Inc. to the Gilreaths.

Helen Gilreath passed away in 2011. Because she was intestate, her one-quarter interest in the property immediately vested in her heirs at law, namely John Gilreath and the appellee heirs. OCGA § 53-2-1 (c); OCGA § 53-2-7 (a).

On September 5, 2013, John Gilreath entered into a transaction to refinance the property. As part of that transaction, he executed a deed to secure debt, which was later recorded, conveying an interest in the property to MERS as nominee for Village Capital. That property interest secured a loan from Village Capital to John Gilreath, which was used to pay off the 2009 loan encumbering the property. The 2013 deed to secure debt between John Gilreath and MERS purported to convey a security interest

over the entire property, rather than just John Gilreath's portion. None of the appellee heirs were parties to the 2013 deed to secure debt.

John Gilreath passed away in 2021, and in 2022 MERS assigned the 2013 deed to secure debt to MidFirst Bank. On January 30, 2023, the Bank brought this action against the known and unknown heirs of Helen and John Gilreath. In its complaint, later amended, the Bank sought alternative relief. First, it asked the trial court for *equitable reformation*: (1) to reform the real estate records to reflect that the 2013 deed to secure debt encumbers the interests of Helen Gilreath's heirs in the property and is valid and enforceable as a first priority interest in the entire property; and (2) to declare that the 2013 deed to secure debt encumbers the interests of Helen Gilreath's heirs in the property and is valid and enforceable as a first priority interest in the entire property. As a second alternative, the Bank asked for *equitable subrogation*. It asked the trial court to subrogate it to the rights and remedies of the 2009 deed to secure debt, which encumbered the entire property. As a third alternative, the bank asked the trial court to impress upon the entire property a first priority *equitable lien*.

The Bank sought summary judgment against some of the appellee heirs on all of the claims asserted in its complaint.[1] The trial court denied the motion for summary judgment, expressly addressing the equitable reformation and equitable subrogation claims. The trial court also stated that the appellee heirs "still have title to an undivided one-quarter[2] interest in the [p]roperty."

We granted the Bank's application for interlocutory appellate review. On appeal, the Bank claims that the trial court erred by finding, as a matter of law, that it was not entitled to the remedies of equitable reformation, equitable subrogation, or

---

[1] The group of appellee heirs against whom the Bank sought summary judgment were the original defendants, as to whom the trial court already had denied a motion for default judgment filed by the Bank. In an amended complaint, the Bank added more appellee heirs as defendants to the lawsuit, and it sought a default judgment against those additional defendants at the same time that it moved for summary judgment against the original defendants. The trial court also denied that second motion for default judgment. The Bank does not enumerate as error either default-judgment ruling.

[2] We agree with the Bank's separate claim that the trial court erred when he stated that the appellee heirs hold a one-quarter interest in the property, because this statement did not take into consideration John Gilreath's heirship interest in the property. As we explain in Division 4, below, that error, however, does not require reversal.

equitable lien. As detailed below, we find no merit in the claims of error concerning equitable relief.

2. *Equitable reformation*

The Bank argues that, as a matter of law, it is entitled to equitable reformation of the 2013 deed to secure debt to encumber the entire property, rather than only John Gilreath's portion, based on a mutual mistake of the parties. (Although the Bank's complaint sought to reform the county "records," in its briefing before the trial court and this court it argues specifically for a reformation of the 2013 deed to secure debt.) We find no error.

Our Code provides for equitable relief for mistakes in certain circumstances. See OCGA § 23-2-21. "If the form of [a] conveyance is, by accident or mistake, contrary to the intention of the parties in their contract, equity shall interfere to make it conform thereto." OCGA § 23-2-25. "This statute applies when the form of conveyance is a security deed." *Vibert v. Bank of Am.*, 327 Ga. App. 782, 783 (761 SE2d 162) (2014) (citation and punctuation omitted).

Nevertheless, "[e]quity is ancillary, not antagonistic, to the law; hence, equity follows the law where the rule of law is applicable. . . ." OCGA § 23-1-6. "Where

rights are defined by existing legal principles, they may not be changed or unsettled in equity. Although equity does seek to do complete justice, it must do so within the parameters of the law." *Dolinger v. Driver*, 269 Ga. 141, 143 (4) (498 SE2d 252) (1998) (citations and punctuation omitted).

As detailed above, John Gilreath did not have an interest in the entire property when he executed the 2013 deed to secure debt. Consequently, Gilreath could not convey a security interest in the entire property to the Bank's predecessor-in-interest, because he "had no authority to convey a greater interest than he held." *Chase Manhattan Mtg. Corp. v. Shelton*, 290 Ga. 544, 548 (3) (722 SE2d 743) (2012). Even if, as the Bank argues, the appellee heirs mistakenly believed that John Gilreath held an interest in the entire property when he executed the 2013 deed to secure debt (established through their failure to respond to requests to admit on that matter, see OCGA § 9-11-36 (b)), their belief does not mean that John Gilreath actually had such an interest. Moreover, the claim for equitable reformation does not turn on a mistake by the appellee heirs, because the appellee heirs were not parties to the deed that the Bank seeks to reform. The trial court did not err in declining to reform the deed to

8

secure debt to allow John Gilreath to convey a property interest outside "the parameters of the law." *Dolinger*, 269 Ga. at 143 (4).

2. *Equitable subrogation*

The Bank argues that, as a matter of law, it is entitled to relief under the doctrine of equitable subrogation. We find no error.

Our Supreme Court has described the doctrine of equitable subrogation as follows:

> Where one advances money to pay off an encumbrance on realty either at the instance of the owner of the property or the holder of the encumbrance, either upon the express understanding or under circumstances under which an understanding will be implied that the advance made is to be secured by the senior lien on the property, in the event the new security is for any reason not a first lien on the property, the holder of the security, if not chargeable with culpable or inexcusable neglect, will be subrogated to the rights of the prior encumbrancer under the security held by him, unless the superior or equal equity of others would be prejudiced thereby. . . .

*Davis v. Johnson*, 241 Ga. 436, 438 (246 SE2d 297) (1978) (footnote omitted). "Essentially, this doctrine provides that where it was the intent of the parties to substitute a new creditor's rights for the rights of the creditor that is being paid off,

the new creditor steps into the shoes of the old creditor in terms of priority." *Chase Manhattan Mtg. Corp.*, 290 Ga. at 549 (4).

But "equitable subrogation is a doctrine that goes to the superiority of competing, valid interests in property, and it has no application where one party has good title, and the other has no interest at all." *Vatacs Group v. U. S. Bank*, 292 Ga. 483, 485-486 (2) (738 SE2d 83) (2013) (footnote omitted). In situations involving co-tenants with ownership interests in the same property, our Supreme Court has rejected attempts by the creditor of one of the tenants to use the doctrine of equitable subrogation to encumber the co-tenant's interest, when the co-tenant was not a party to the loan and the creditor otherwise had no interest in the co-tenant's share of the property. See *Chase Manhattan Mtg. Corp.*, 290 Ga. at 550 (4) (holding that the appellant creditors' claim for equitable subrogation had no merit, on grounds of inexcusable neglect among other reasons, where the creditors' predecessor-in-interest did not confirm that the person who executed a deed to secure debt in a refinancing transaction was able to convey an interest in the entire property); *Bankers Trust Co. v. Hardy*, 281 Ga. 561, 563 (640 SE2d 18) (2007) (holding that the appellant creditor's claim for equitable subrogation had no merit for two reasons: because the creditor was

charged with inexcusable neglect for failing to account for the property interest of a co-tenant who was not a party to the refinancing loan and had not signed the deed to secure debt; and because application of the doctrine of equitable subrogation would prejudice that co-tenant's superior equity in the property "by essentially holding him liable under the contract entered between [the creditor] and [the person who signed the deed to secure debt]").

This is not a case involving the priority of liens against the appellee heirs' portion of the property. Instead, as explained above, the 2013 deed to secure debt did not convey *any* interest in the appellee heirs' portion of the property, because John Gilreath was only able to convey that portion of the property in which he had an interest, and he had no interest in the appellee heirs' portion. Like the co-tenants in *Chase Manhattan Mtg. Corp.*, supra, and *Bankers Trust Co.*, supra, the appellee heirs were not parties to the refinancing loan and did not sign the deed to secure debt. For the reasons set forth in those decisions and in *Vatacs Group*, supra, we find no error in the trial court's decision not to apply the equitable subrogation doctrine.

3. *Equitable lien*

11

The Bank argues the trial court erred in failing to specifically address its claim for an equitable lien, and it argues that the trial court should have granted its motion for summary judgment on that claim. We find no error.

First, although the trial court did not specifically address the equitable lien claim, he denied the Bank's motion for summary judgment in its entirety. The trial court was not obligated to make express findings of fact or conclusions of law with regard to that claim, see *Dixie Diners Atlanta v. Gwinnett Fed. Bank*, 211 Ga. App. 364, 366 (1) (439 SE2d 53) (1993), and his failure to do so is not a ground for reversal.

In addition, the Bank has not shown that as a matter of law it is entitled to an equitable lien. As the Bank explains in its appellate brief, "[a] special or equitable lien is not an estate or property in the thing itself, nor a right to recover the thing. It is simply a right of a special nature over the thing, which constitutes a charge or encumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action." *DeKalb County v. J & A Pipeline Co.*, 263 Ga. 645, 651-652 (4) (437 SE2d 327) (1993) (citation and punctuation omitted). Georgia law permits such a lien to be imposed upon property "whenever the rules of equity require this remedy." *Routon v. Woodbury Banking Co.*, 209 Ga. 706, 707 (75 SE2d 561) (1953).

12

But as discussed above, equity must operate "within the parameters of the law." *Dolinger*, 269 Ga. at 143 (4). And as discussed above, the law did not permit John Gilreath to convey an interest in property that did not belong to him. Nor, as discussed above, does the doctrine of equitable subrogation apply. Given this, we are not persuaded that equity requires the trial court to encumber the appellee heirs' property by imposing a lien upon it. So we find no error by the trial court.

4. *The respective interests of Gilreath and the heirs*

The Bank argues that the trial court erred in finding that the appellee heirs possess a one-quarter interest in the property. We agree. As detailed in the factual recitation above, Helen Gilreath's one-quarter interest in the property immediately vested in her heirs at law upon her death, and John Gilreath was one of those heirs. Consequently, in addition to his three-quarter interest in the property, John Gilreath obtained a portion of Helen Gilreath's one-quarter interest in the property, leaving the appellee heirs with something less than a one-quarter interest.

This error is not a ground for reversing the trial court's denial of summary judgment on the Bank's equitable claims. But in any further proceedings before the trial court, we direct the trial court to take into account that John Gilreath had a

13

portion of the one-quarter interest in the property that passed to Helen Gilreath's heirs.

*Judgment affirmed with direction. Hodges and Pipkin, JJ., concur.*